Robert STYTLE, Appellant–Plaintiff,

v.

ANGOLA DIE CASTING CO. and
DuPage Die Casting of Indiana,
Appellees–Defendants.

No. 93A02–0311–EX–970.

Court of Appeals of Indiana.

April 20, 2004.

James E. Ayers, Wernle, Ristine & Ayers, Linden, IN, Attorney for Appellant.

Mark D. Ulmschneider, Steele, Ulmschneider & Malloy, Fort Wayne, IN, Attorney for Appellees.

## OPINION

RATLIFF, Senior Judge.

### Case Summary

Appellant-plaintiff Robert Stytle appeals the dismissal of his application for adjustment of claim by the Worker's Compensation Board ("the Board"). We affirm.

### Issue

We restate the issue Stytle presents as whether Indiana Code Section 22–3–7–9(f) as applied violates Article 1, Section 12 of the Indiana Constitution.

### Facts and Procedural History

As a different panel of this court explained in a previous opinion in this case,

> Stytle was employed at Angola Die Casting Company ("Angola") from June 1984 through April 1990. Following his employment at Angola, Stytle worked as a deputy for the Town of Hamilton. At some point during his employment as a deputy, Stytle began experiencing memory loss, and at age fifty, Stytle claims he was diagnosed with possible Alzheimer's disease. Stytle was determined to be totally disabled in April 1998. In July 2000, Stytle consulted a psychiatrist, who concluded that his exposure to

aluminum during his employment at Angola "would be the primary consideration for [his] etiology" of cognitive problems.

In August 2000, Stytle filed his application for adjustment of claim against Angola. In October 2000, Stytle filed an amendment to his application to include DuPage Die Casting of Indiana ("DuPage") as a defendant, alleging that DuPage is a successor to Angola. In June 2001, Angola and DuPage filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that: (1) Stytle's claim against DuPage should be dismissed because Stytle was never employed by DuPage; (2) Stytle's claim against Angola should be dismissed because his claim is time-barred by the occurrence-based, two-year statute of limitations; and (3) even if Stytle does have a valid claim, Angola's and DuPage's insurance carrier is not responsible for any benefits awarded.

*Stytle v. Angola Die Casting Co.*, 783 N.E.2d 316, 317–18 (Ind.Ct.App.2003). A single hearing member of the Board granted Angola and DuPage's motion to dismiss in a decision that contained no findings of fact but rather "a recitation of the pleadings filed by the parties[.]" *Id.* at 319. The full Board subsequently adopted and affirmed the single hearing member's decision.

On appeal, we noted that the lack of specific findings left both the parties and our court to speculate as to the rationale for the Board's dismissal of Stytle's application. *Id.* at 322. We determined that the Board's findings of fact were insufficient to permit intelligent review and reversed and remanded for more specific findings. *Id.*

On remand, the Board entered the following findings:

Therefore, the Board would state that Plaintiff's Application for Adjustment of Claim, filed on August 20th, 2000, is dismissed as it was filed more than ten years after the last date on which he worked for the Defendant.

Plaintiff was employed by Angola Die Casting Company (Defendant Angola Die Casting Company was purchased by Du[P]age Die Casting on March 27th, 1997) from June of 1984 until April of 1990.

As Plaintiff claims he suffers from aluminum poisoning as a result of his employment with the Defendant, his claim falls under the Occupational Disease Act [Indiana Code Sections 22–3–7–1 through –38]. This Act has a twofold statute of limitations.

Indiana Code [Section] 22–3–7–9[ (f) ] states in part, "No compensation shall be payable for or on account of any occupational diseases unless disablement, as defined in [subsection (e) ], occurs within two years after the last day of the last exposure to the hazards ... [.]"

Disablement is defined as the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazard of the disease, or equal wages in other suitable employment.

Indiana Code Section 22–3–7–32(c) then requires the employee to file an application for benefits within two years after the date of disablement.

Thus, in effect, an employee has four years from the last date of his exposure in which to file an application for benefits under the Occupational Diseases Act.

In the present case the Plaintiff was informed there may be a connection between his symptoms and exposure to

aluminum while employed by Angola Die Casting in the summer of 2000.

Plaintiff promptly filed his application for benefits; however, more than ten years had passed since his last exposure to aluminum at Defendant's facility.

Thus, in accordance with the Occupational Diseases Act, the Plaintiff may not maintain a claim for benefits and no compensation is payable for any occupational disease contracted by the Plaintiff while he was employed by the Defendant. [Stytle's application] is dismissed with prejudice.

Appellant's App. at 115–17. Stytle now appeals.

### Discussion and Decision

In a footnote to our previous opinion, we acknowledged that Stytle had challenged the constitutionality of Indiana Code Section 22–3–7–9(f), asserting "that when a worker does not learn of a disease until more than two years after the date of his last exposure, his claim should not be time-barred." *Stytle,* 783 N.E.2d at 321 n. 1. Because the Board had failed to specify the grounds on which it dismissed Stytle's application, however, we did not address his constitutional challenge. On remand, the Board determined that Stytle's claim is time-barred; consequently, his constitutional challenge is squarely before us today.

With respect to the Occupational Diseases Act ("ODA"), our supreme court has stated that it

was enacted more than twenty years after introduction of the workers compensation scheme. By authorizing compensation for certain diseases not caused by an employer's negligence, the ODA created new rights and remedies previously unrecognized by our common law. The object of this act is the protection of workers who come within its provisions, and it should be liberally construed to effectuate this humane purpose. Nonetheless, its scope is fixed by provisions which were the product of careful legislative compromise, and these cannot be enlarged by judicial pronouncement.

*Baker v. Westinghouse Elec. Corp.,* 637 N.E.2d 1271, 1275 (Ind.1994) (citations omitted).

Indiana Code Section 22–3–7–6 provides that the rights and remedies granted under the ODA

to an employee subject to this chapter on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.

Indiana Code Section 22–3–7–9(e) defines "disablement" as "the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation or equal wages in other suitable employment, and 'disability' means the state of being so incapacitated." The subsection of that statute at issue here, Indiana Code Section 22–3–7–9(f) provides,

For the purpose of this chapter, no compensation shall be payable for or on account of any occupational diseases unless disablement, as defined in subsection (e), occurs within two (2) years after the last day of the last exposure to the hazards of the disease except for the following:

(1) In all cases of occupational diseases caused by the inhalation of silica dust or coal dust, no compensation shall be payable unless disablement,

as defined in subsection (e), occurs within three (3) years after the last day of the last exposure to the hazards of the disease.

(2) In all cases of occupational disease caused by the exposure to radiation, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within two (2) years from the date on which the employee had knowledge of the nature of his occupational disease or, by exercise of reasonable diligence, should have known of the existence of such disease and its causal relationship to his employment.

(3) In all cases of occupational diseases caused by the inhalation of asbestos dust, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within three (3) years after the last day of the last exposure to the hazards of the disease if the last day of the last exposure was before July 1, 1985.

(4) In all cases of occupational disease caused by the inhalation of asbestos dust in which the last date of the last exposure occurs on or after July 1, 1985, and before July 1, 1988, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within twenty (20) years after the last day of the last exposure.

(5) In all cases of occupational disease caused by the inhalation of asbestos dust in which the last date of the last exposure occurs on or after July 1, 1988, no compensation shall be payable unless disablement (as defined in subsection (e)) occurs within thirty-five (35) years after the last day of the last exposure.

Indiana Code Section 22–3–7–32 states that "[n]o proceedings by an employee for compensation under this chapter shall be maintained unless claim for compensation shall be filed by the employee with the worker's compensation board at least two (2) years after the date of the disablement."

The parties do not specifically dispute that Stytle was disabled or that his disease arose out of or in the course of employment.[1] Neither do the parties dispute that Stytle's disablement occurred more than two years after the last day of his last exposure to the hazards of his disease. As such, there is no dispute that Indiana Code Section 22–3–7–9(f) bars Stytle's claim. The question Stytle presents is whether Indiana Code Section 22–3–7–9(f) as applied in this case violates Article I, Section 12 of the Indiana Constitution, which reads, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

Strictly speaking, Indiana Code Section 22–3–7–9(f) is a statute of repose, rather than a statute of limitation. As we explained in *Kissel v. Rosenbaum*, 579 N.E.2d 1322 (Ind.Ct.App.1991),

A statute of limitation requires a lawsuit to be filed within a specified period of time after a legal right has been violated. In contrast, a statute of repose is

---

**1.** Appellees dispute Stytle's assertion that he "suffers from aluminum poisoning, not Alzheimer's disease." Appellant's Br. at 4. As Appellees point out, Stytle's attending psychiatrist noted on July 11, 2000, that his elevated aluminum levels "would be the primary consideration for etiology" of his cognitive problems but did not specifically diagnose him as suffering from aluminum poisoning. Appellant's App. at 64. Given our resolution of Stytle's claim, we need not belabor this point.

designed to bar actions after a specified period of time has run from the occurrence of some event other than the injury which gave rise to the claim. A statute of repose might theoretically bar a claim filed within the period allowed by the applicable statute of limitation. A statute of limitation extinguishes a remedy while a statute of repose may bar a cause of action even before it arises. In practical terms, a statute of repose marks the boundary of a substantive right whereas a statute of limitation interposes itself only procedurally to bar a remedy after a substantive right has vested. A statute of limitation implicitly seeks to punish those who sleep on their rights, while a statute of repose operates to bar some recoveries no matter how diligently the claim may have been asserted.

. . . .

. . . . The statute of repose appears to bar claims, not because of disappearance of evidence but because of the passage of a stated amount of time within which the legislature has, for public policy reasons, deemed it appropriate to bring the claim, regardless of when the claim accrues. In this manner, the statute of repose also advances the statute of limitations policies of the peace, welfare, convenience, necessity, and well-being of society.

. . . .

Statutes of repose are based upon considerations of the economic best interests of the public as a whole and are substantive grants of immunity based upon a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists. Thus, a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.

*Id.* at 1326–28 (citations omitted). The requirement of Indiana Code Section 22–3–7–9(f) that disablement occur within two years "after the last day of the last exposure to the hazards of the disease" is a condition precedent to the right to seek compensation under the ODA. *Cf. Durham Mfg. Co. v. Hutchins,* 115 Ind.App. 479, 483, 58 N.E.2d 444, 446 (1945) ("[T]he mere contraction of an occupational disease does not entitle the workman to compensation. The *sine qua non* is disablement."), *trans. denied.* Indiana Code Section 22–3–7–32(c), a statute of limitation, bars the bringing of a compensation claim more than two years after disablement occurs.

■ Whether a statute of repose is constitutional as applied is a question of law to be determined on a case-by-case basis. *See Langman v. Milos,* 765 N.E.2d 227, 235 (Ind.Ct.App.2002) (stating principle with respect to statute of limitation in non-administrative case), *trans. denied; Stytle,* 783 N.E.2d at 321 n. 1 (noting that an administrative body "cannot determine the constitutionality of a statute"). "Every statute stands clothed with the presumption of constitutionality until clearly overcome by a contrary showing. The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party." *Dep't of Local Gov't Fin. v. Griffin,* 784 N.E.2d 448, 452 (Ind.2003) (citation omitted).

Stytle contends that Indiana Code Section 22–3–7–9(f) "is unconstitutional as applied here because [he] did not know, and in the exercise of reasonable diligence, could not have discovered that he had suffered an injury or disease-causing exposure in the course of and arising out of his

employment" before the two-year period of repose expired. Appellant's Br. at 13–14. He further contends that "[i]t would be a denial of justice to dismiss [his] claim because his disablement did not occur within two (2) years of last exposure." *Id.* at 11. Stytle relies on several product liability and medical malpractice cases, such as *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999), to support his contentions. We believe that Stytle's reliance on these cases is misplaced because our supreme court has already spoken on the constitutionality of Indiana Code Section 22–3–7–9(f).

In *Bunker v. National Gypsum Co.*, 441 N.E.2d 8 (Ind.1982), our supreme court reversed our court's determination that the statute was unconstitutional as applied to a plaintiff whose disability, allegedly caused by his work-related exposure to asbestos dust, "had not arisen within three years of the date of his last job-related exposure and therefore was not compensable." *Id.* at 9. A divided panel of this court had concluded that to impose the three-year ban was "to violate the classic constitutional mandate [of due process], because to do so amounts to a practical denial of the very right to recovery that the statute was intended to provide.'" *Id.* at 10 (quoting *Bunker v. Nat'l Gypsum*, 426 N.E.2d 422, 425 (Ind.Ct.App.1981), *trans. granted* (1982)).

Our supreme court concluded otherwise, noting that "[t]he legislature has the sole duty and responsibility to determine what constitutes a reasonable time for the bringing of an action unless the period allowed is so manifestly insufficient that it represents a denial of justice." *Id.* at 12. The *Bunker* court further stated,

> In questioning the wisdom of the legislature, the Court of Appeals has in effect rewritten this law thereby usurping the legislature's constitutionally mandated function. If we were to affirm the Court of Appeals in their decision, the legislative intent to provide a definitive time period within which all occupational disease claims must be brought would be frustrated. Specifically, Ind.Code § 22–3–7–9(e) [now (f) ] would be meaningless because all disabilities caused by a work-related disease would be compensable under the Act. In addition, the statutory scheme providing for the application of a "discovery" rule only in radiation exposure cases would be subverted. We will not allow such a blatant abuse of judicial power. We have previously found constitutional a statute similar to the instant one. *See generally: Rohrabaugh [v. Wagoner,* 274 Ind. 661, 413 N.E.2d 891 (1981) ]; *Johnson [v. St. Vincent Hosp.,* 273 Ind. 374, 404 N.E.2d 585 (1980) ].* We now find the statute of limitations provision of the Occupational Diseases Act to be constitutional in all respects.

*Id.* at 13–14.

Finally, the *Bunker* court chastised our court for considering extra-record medical evidence regarding asbestosis in our constitutional analysis:

> It is within the duties and responsibilities of the legislature to keep itself advised of the general progress of medical learning and to make the determination as to whether or not new or revised legislation is needed. Not only being so charged, the legislature is also best equipped to make this determination. A cursory examination of the legislative history of the Indiana Occupational Diseases Act shows that since its inception in 1937, the legislature has on several occasions updated the Act through amendment. In fact, the proviso which relates to occupational disabilities caused by radiation exposure was added in 1961. Again in 1974 when disabilities due to coal dust inhalation were made

subject to the three year limitation period, the General Assembly indicated that it was aware of its need to review and revise the Occupational Diseases Act. If this statute requires further updating through amendment, it remains the duty and responsibility of the legislature to do so. There are no grounds for finding any constitutional infirmity in the present form of this statute.

*Id.* at 14.

We are obliged to follow precedents established by our supreme court, which are binding until changed either by a subsequent supreme court decision or by legislative enactment. *Computer Co., Inc. v. Davidson Indus., Inc.,* 623 N.E.2d 1075, 1079 (Ind.Ct.App.1993). We acknowledge that the statute of repose at issue in *Bunker* specifically addressed asbestos-related claims, but we note that our supreme court has not disavowed its holding in that case, and the legislature has not updated Indiana Code Section 22–3–7–9(f) to provide for a discovery rule in aluminum poisoning cases. Our court is ill-equipped to determine as a matter of law whether a discovery rule for work-related exposure to certain substances is warranted on the basis of a cold and meager administrative record, and we are likewise ill-equipped to determine an appropriate period of repose. As the *Bunker* court astutely observed, such determinations are properly reserved for the legislature. In light of these considerations and the circumstances of this case, we cannot conclude that a two-year period of repose is so manifestly insufficient that it represents a denial of justice.

We therefore hold that Indiana Code Section 22–3–7–9(f) is not unconstitutional as applied to Stytle, who did not become disabled from alleged work-related aluminum poisoning until eight years after he was last exposed to aluminum as an Angola employee. Consequently, we affirm the Board's dismissal of Stytle's application as time-barred.

Affirmed.

SULLIVAN, J., and ROBB, J., concur.