Darryl HARRIS, Appellant–Plaintiff,

v.

UNITED WATER SERVICES,
INC., Appellee–Defendant.

No. 93A02–1010–EX–1164.

Court of Appeals of Indiana.

March 21, 2011.

Sandra O'Brien, Mindel & Associates, Hobart, IN, Attorney for Appellant.

Chad J. Melchi, Burke Costanza & Cuppy LLP, Valparaiso, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Darryl Harris ("Harris") was employed by United Water Services, Inc. ("United Water"), a waste water treatment plant. During the time that he worked for United Water, Harris developed a bacterial infection, acid reflux, an ulcer, and gastric cancer. Harris filed a worker's compensation claim, alleging that his illnesses were caused by exposure to bacteria while working for United Water. United Water filed a motion to dismiss, arguing that his symptoms all stemmed from a particular incident when Harris was splashed in the face by waste water and that his claim had not been filed within two years of that incident. Harris argued that his medical condition was either an occupational disease or a repetitive injury, which would alter the starting date for statute of limitations analysis. A single hearing member of the Worker's Compensation Board ("the Board") found that Harris had admitted that his condition stemmed from a single incident and granted the motion to dismiss. The full Board affirmed and adopted the single hearing member's decision. We conclude that Harris's deposition testimony does not support the Board's finding that he admitted that his condition stemmed from a single incident and that the Board applied the wrong burden of proof. Therefore, we reverse and remand for further proceedings consistent with this opinion.

### Facts and Procedural History

United Water processes waste water from Gary and surrounding areas. On

March 28, 2005, United Water hired Harris as an operator-in-training. His job included monitoring equipment, taking samples, and clearing waste water and "sludge" on occasions when equipment clogged or malfunctioned. Appellant's App. at 42. Harris was provided with overalls, safety glasses, and a helmet, but according to Harris, other protective gear, such as gloves, goggles, and face shields were not always available when needed.

On December 15, 2005, Harris was splashed in the face with waste water, and he believed that he ingested some of the waste. Harris noted immediate symptoms, including pain in his mouth. Harris went to the emergency room, where it was determined that he had a dental cavity and a sebaceous cyst on his chin. Afterward, Harris filed an "Unsafe Condition Report" in which he reported to United Water that he had a bacterial infection on the bottom of his chin as a result of being splashed in the face with waste. *Id.* at 84.

Harris began having acid reflux around February 2006. Initially, Harris treated himself with Pepto Bismol and changed his diet, which seemed to help. Harris was off work from July 2006 to March 2007 because United Water fired him; however, he was reinstated after filing a successful grievance. When Harris returned to work, his symptoms worsened and his acid reflux became painful.

On August 21, 2007, Harris saw his primary care physician, Dr. Lucena. Dr. Lucena's records show that Harris complained of "mid-epigastric pain on and off" for two months. *Id.* at 86. Harris tested positive for a bacterial infection of Helicobacter pylori ("H. pylori"), and Dr. Lucena prescribed Biaxin, Flagyl, and Prevacid.

On August 25, 2007, Harris was taken to the emergency room because he had severe abdominal pain and was having difficulty breathing. He was diagnosed with a perforated ulcer, and he underwent surgery. A biopsy of his stomach revealed that he had gastric cancer. Harris remained in the hospital until September 14, 2007. Harris did not return to work at United Water and has remained unemployed. At the time of his deposition on October 24, 2008, Harris was still taking antibiotics to treat the H. pylori infection.

On May 2, 2008, Harris filed an application for adjustment of claim with the Board, which indicated that he was pursuing a worker's compensation claim and an occupational disease claim. On June 24, 2008, United Water filed a motion to dismiss for lack of subject matter jurisdiction. United Water's theory was that all of Harris's medical conditions stemmed solely from the December 15, 2005, incident when he was splashed in the face with waste, and because Harris did not file his claim until more than two years later, the statute of limitation had run. In support of its argument, United Water submitted Harris's deposition, his medical records, and the Unsafe Condition Report that he had filed. Harris's response argued that his condition was an occupational disease rather than an isolated injury and that the applicable statute of limitation had not run.

After a hearing, the single hearing member granted United Water's motion to dismiss, and Harris appealed to the full Board. On August 30, 2010, a hearing was held before the Board. The Board affirmed by a 4–3 vote and adopted the single hearing member's findings and conclusions. The Board found that Harris admitted "that the injury occurred on December 15, 2005, and that the applicable statute of limitations in the context of a worker's compensation claim expired in December, 2007." *Id.* at 9. The Board therefore concluded that Harris had suffered an injury rather than an occupational

disease and that his claim was untimely. The Board's order further stated:

> [E]ven assuming the stomach cancer contracted by Plaintiff was a disease, it would properly be designated as an "injury" under the Act, rather than a disease because, according to Plaintiff's own admission, the initial infection and eventual cancer was linked to a sudden, specific incident of exposure, or an injury pursuant to the statutory construct. Nothing in the record or evidence indicates that Plaintiff contracted stomach cancer through a passive exposure to conditions at the workplace. Plaintiff did not contract stomach cancer through prolonged exposure; according to Plaintiff it took only one (1) traumatic exposure on December 15, 2005, the only occasion that he testified that he suffered an injury. Plaintiff did not present any evidence or even allege that he had contracted stomach cancer in a manner consistent with the definition of occupational disease in Indiana Code § 22–3–7–10.

*Id.* at 11. Harris now appeals.

## Discussion and Decision

### I. Standard of Review

■ The parties dispute the applicable standard of review. Harris argues that we should use the standard of review that applies on appeal of a ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1):

> If the facts before the trial court are in dispute, then our standard of review

focuses on whether the trial court conducted an evidentiary hearing. Under those circumstances, the court typically engages in its classic factfinding function, often evaluating the character and credibility of witnesses. Thus, where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. . . .

However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001) (citations omitted).[1] Because the Board ruled on a paper record, Harris argues that the decision should be reviewed de novo.

United Water argues that we should apply the more deferential standard that is normally used on appeal of an administrative order:

> "In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." We examine the record only to determine

---

1. The Board is not bound by the Indiana Trial Rules. *LaGarda Sec. v. Lawalin,* 812 N.E.2d 830, 834 n. 2 (Ind.Ct.App.2004) (declining to apply Trial Rule 60 on appeal of the Board's denial of a motion to set aside judgment). However, the parties do not cite, and we are not aware of any statute or regulation governing motions to dismiss in worker's compensation proceedings. The Board has explicitly adopted Trial Rules 26 through 37, but not Trial Rule 12. Therefore, it is unclear whether the Board has informally recognized Trial Rule 12 or employs some other procedure.

whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. We will not reweigh the evidence or reassess witness credibility. "As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area." The Board will only be reversed if it incorrectly interpreted the Act.

*Wright Tree Serv. v. Hernandez,* 907 N.E.2d 183, 186 (Ind.Ct.App.2009) (citations omitted), *trans. denied.*

Neither party cites a case involving an appeal from an administrative agency's ruling on a motion to dismiss. Our independent research revealed that we have not consistently applied a single standard of review in this context. *Compare Gerlach v. Woodke,* 881 N.E.2d 1006, 1009 (Ind.Ct.App.2008) (applying the Trial Rule 12(B)(1) standard of review), *aff'd on reh'g, trans. denied, with Fitzgerald v. U.S. Steel,* 892 N.E.2d 659, 662 (Ind.Ct.App. 2008) (applying the more deferential standard of review of Board's determination that it lacked jurisdiction because the action was time-barred).

We believe that our supreme court's opinion in *Northern Indiana Public Service Co. v. United States Steel Corp.,* 907 N.E.2d 1012 (Ind.2009) (*"NIPSCO "*), sheds light on the appropriate standard of review. *NIPSCO* involved an appeal from the Indiana Utility Regulatory Commission's ("IURC") grant of summary judgment for U.S. Steel in a dispute concerning the interpretation of a settlement agreement that had previously been approved by the IURC. The court rejected *NIPSCO's* contention that the standard of review should be de novo:

Appellate courts apply a *de novo* standard when reviewing a trial court's summary judgment order because the reviewing court faces the same issues that were before the trial court and analyzes them the same way. By contrast, review of an agency order does not involve the same analysis on appeal. As Justice Arterburn wrote, "ratemaking is a legislative, not a judicial function. . . ." Agencies are not judicial bodies. They are executive branch institutions which the General Assembly has empowered with delegated duties. As such, an adjudication by an agency deserves a higher level of deference than a summary judgment order by a trial court falling squarely within the judicial branch. We therefore apply the established standard of review for judicial review of Commission orders.

[Pursuant to] the statutory standard of review, "basic facts are reviewed for substantial evidence, legal propositions are reviewed for their correctness." Ultimate facts or "mixed questions" are evaluated for reasonableness, with the amount of deference depending on whether the issue falls within the Commission's expertise.

*Id.* at 18 (citations omitted).

The rationale for applying a de novo review on appeal of a motion to dismiss is that we are in as good of a position as the trial court to rule on a paper record. However, in *NIPSCO,* our supreme court was also reviewing a paper record, yet it determined that a more deferential standard should apply in recognition of the agency's expertise in the subject matter. Therefore, in accordance with *NIPSCO,* we will apply the more deferential standard of review.

▪ United Water also contends that Harris bore the burden of proof and there-

fore is appealing from a negative judgment. United Water is incorrect. Although Harris bears the burden of proof on the merits of his claim, United Water bore the burden of proving the grounds for dismissal. *See GKN Co.,* 744 N.E.2d at 403–04 (party challenging jurisdiction carries the burden of establishing that jurisdiction does not exist); *City of East Chicago v. East Chicago Second Century, Inc.,* 908 N.E.2d 611, 617–18 (Ind.2009) ("A party asserting the statute of limitation as an affirmative defense bears the burden of establishing that the action was commenced beyond the statutory period"); *Vandenberg v. Snedegar Const., Inc.,* 911 N.E.2d 681, 687 n. 1 (Ind.Ct.App.2009) (company bears the burden of proving affirmative defenses in a Worker's Compensation case), *trans. denied.*

## II. Statute of Limitation

United Water's theory of the case is that Harris's medical condition stems from a single accident—the December 15, 2005 incident when he was splashed in the face. Pursuant to Indiana Code Section 22–3–3–3, a worker's compensation claim must be filed within two years of the accident. Because Harris did not file his claim until May 2, 2008, United Water argues that his claim is untimely.

Harris contends that his medical condition is an occupational disease. "Occupational disease" is defined by Indiana Code Section 22–3–7–10 as follows:

(a) As used in this chapter, "occupational disease" means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section.

(b) A disease arises out of the employment only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

■■■ "The term 'exposure' indicates a passive relationship between the worker and his work environment rather than an event or occurrence, or series of occurrences, which constitute injury under the Worker's Compensation Act." *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, 1125 (Ind.Ct.App.1993). An occupational disease "gradually develops from, and bears a direct causal connection with the conditions under which the work is performed." *Casey v. Stedman Foundry & Mach. Co.,* 134 Ind.App. 291, 293, 186 N.E.2d 177, 178 (1962).[2] A claim for an occupational dis-

---

**2.** United Water's brief and the Board's order both state, without citation to authority, that "a disease originates from a source that is neither traumatic nor physical." Appellee's Br. at 12; Appellant's App. at 10. This statement is neither accurate nor helpful. We question how a disease could originate without a physical cause.

ease must be filed within two years of disablement, and the disablement must occur within two years of the last day of exposure. *Stytle v. Angola Die Casting Co.*, 806 N.E.2d 339, 342–43 (Ind.Ct.App. 2004), *trans. denied.*[3]

■ Alternatively, Harris argues that his condition is a repetitive injury. "When a job-related injury is the result of continuous, day-after-day events which combine to produce an injurious result, a continuing wrong exists and the statute of limitations commences to run when the permanence of the injury is discernible." *Duvall*, 621 N.E.2d at 1127.

■ United Water asserts that Harris has made this argument for the first time on appeal. On his application for adjustment of claim, Harris marked the boxes for both "Worker's Compensation Claim" and "Occupational Disease Claim." Appellant's App. at 103. His response to the motion to dismiss argues that his condition is an occupational disease but does not make any mention of repetitive injury. Neither party requested a transcript of the hearings before the single hearing member or the Board. Therefore, the record before us is ambiguous as to whether Harris properly raised the issue of repetitive injury. We decline to make a finding that the issue was not properly preserved for appeal; the Board is in a better position to determine on remand whether the issue was properly raised.

■ We agree with the Board that United Water's theory, if proven, would establish that Harris's condition was not an occupational disease or repetitive injury, but instead resulted from a single injury that occurred more than two years before he filed his claim.[4] " 'Injury' and 'personal injury' mean only injury by accident arising out of and in the course of the employment and do not include a disease in any form except as it results from the injury." Ind.Code § 22–3–6–1(e). In *Duvall*, we stated that "trauma is synonymous with injury," and that a trauma is a "wound, especially one produced by sudden *physical injury*." 621 N.E.2d at 1126 (emphasis in original). Thus, a disease that is caused by an accident is considered an injury rather than an occupational disease.

■ The Board's analysis, however, flowed from its finding that Harris admitted "that the injury occurred on December 15, 2005, and that the applicable statute of limitations in the context of a worker's compensation claim expired in December, 2007." Appellant's App. at 9. We agree with Harris that this is not a reasonable

---

Substantial portions of the Board's order were copied, with insignificant changes, from United Water's reply brief in support of its motion to dismiss. Although this may not be grounds for reversal per se, it undermines our confidence in the Board's decision, especially when the copied portions include erroneous statements of the law. *See Ind. Dep't of Envtl. Mgmt. v. Lake County Solid Waste Mgmt. Dist.*, 847 N.E.2d 974, 983 (Ind.Ct.App.2006) (noting that trial courts are not prohibited from adopting a party's proposed order verbatim, but "this practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court"), *trans. denied.*

**3.** As we noted in *Stytle*, the requirement that disablement occur within two years of the last day of exposure is technically a statute of repose. 806 N.E.2d at 343. However, that distinction is not material to this case.

**4.** The Board did not specifically address how Harris's claim should be classified if repeated exposure to bacteria—as opposed to a single infection with a definite starting point—is the cause of his illness. United Water conceded to the single hearing member that if Harris's claim is classified as an occupational disease, then the statute of limitations has not run. Appellant's App. at 115.

characterization of his deposition testimony.

At his deposition, Harris testified as follows:

Q. Do you recall the date of the incident that's the subject of your lawsuit?

. . .

A. Well, I can recall working unsafe since the day I started there. I can recall asking for certain equipment all the time, and not being given it. I can recall being splashed.

Q. When was that?

A. Having to walk inside water, waste water, *being sprayed by faulty equipment the whole time.* I can recall asking for repairs, and asking for attention, and not getting it the whole time I was there.

Q. Okay. Do you recall specifically when you contracted the bacterial infection?

A. *I couldn't tell you when I specifically contracted, but I can tell you what I suspect* . . . . I suspect when I was splashed in my face.

Q. When was that?

A. In '05.

Q. Okay. Tell me about that.

A. That something happened because my chin, and my lip, and my gums became infected.

. . . .

Q. Okay. Prior to August 1st, 2007, had you suffered any sort of personal injuries as a result of accidents of any type, be it a[n] automobile, or work-related, or anything like that?

. . . .

A. The only incidences that I can think of [are] what happened to me on the plant. I wrote it up, I submitted it to the company.

Q. That was the one in '05?

. . . .

A. Yes.

. . . .

Q. Do you believe that stomach problems you were experiencing after December 2005 [were] related to being splashed with that water?

A. Yes. And it was related to the water. There's no doubt. It was sludge.

Q. Did you have any stomach pain prior to that incident in December 2005?

A. No, I had no problems.

Q. How did that change then after?

A. Afterwards I began to have acid reflux. . . . I changed my diet. I . . . stopped eating meats, I thought that was the problem. I thought that it was my diet, but I find out later it was a little more than that.

. . . .

Q. Okay. Is [December 2005] when you contracted the . . . infection?

A. *I'm just guessing that that could have been one of the times because this is an issue where I was in pain.*

. . . .

Q. Did you ingest any of this sludge or water [on December 15, 2005]?

A. It was on my face, and on my lips, all the way walking from that particular area, which is a two block to three block radius, all the way to the sink.

Q. So did you ingest any of it?

A. I was—I guess I must have.

Q. Okay. You don't know?

A. I can only tell you that I'm wiping my face as best as I can, and it got in my mouth, and, obviously, it must have done something inside my mouth, and made it's [sic] way into my stomach. . . . I believe that that mess got into my stomach by way of my mouth that day.

Q. And that's what caused you to have this infection?

A. *And I believe it's a major reason why I got this infection.*

. . . .

Q. Is that the sort of incident you believe was required to be reported for these—procedures in place for work-related accidents?

A. Yes, I believe those things need to be reported.

Q. Did you report any other instances of being splashed?

A. No. . . . But I didn't even think that it was necessary to report because it was so commonplace. We get splashed all day, everyday [sic]. Everybody gets splashed. And to make out those reports, we would be making out reports all day, everyday [sic], four, five times a day. . . . So just getting splashed, no. But getting injured from one, yes.

Q. You just testified that you thought that was something you should report if you're splashed, and there's a distinction now you're drawing?

A. Yes. Yes, there's a distinction.

. . . .

Q. So if you were splashed on other occasions, you were never injured as a result of it?

A. *Not to my knowledge. . . . I couldn't tell whether or not, but this was—my mouth getting infected, and being in pain, was obvious. . . .*

Q. All right. So other than this December 2005 incident, were you involved in any other work-related accidents where you were injured while employed at United Water?

A. *Not that I know of. But the bacteria is always present on the plant. . . . And if I didn't get it the day I got splashed, I could have gotten [it] any other time between then, and the date in which I ended up in the hospital.*

Q. But this is the date you believe when you contracted?

A. This is a date where I can tie an incident to where the stuff went in my mouth.

*Id.* at 52–53, 65–68 (emphases added).

Harris testified that he suspected that he first became infected on December 15, 2005, because he was certain that he ingested waste on that day and also experienced immediate symptoms. Although he thought the December 15, 2005, incident was a major factor contributing to his illness, he also stated that he was always exposed to bacteria and could have contracted it at any time. Harris made it clear that he was splashed multiple times during each shift, that he often lacked protective gear, and that he felt that the company provided inadequate facilities for cleaning up. The record shows that he also considered having to eat in unclean facilities to be a factor in his illness. *Id.* at 101. He reported the December 15, 2005, incident because he immediately experienced symptoms, but did not report other splashes because they were so commonplace and he could not tie his various medical issues to particular incidents. Furthermore, the medical evidence shows that after the December 15, 2005, incident he was diagnosed with a sebaceous cyst and a dental cavity; he did not develop stomach pain until later.[5] In sum, Harris

---

5. United Water once again mischaracterizes the evidence by asserting that Harris suffered from stomach pain immediately after the December 15, 2005, incident. *See, e.g.,* Appellee's Br. at 18. Harris testified that he had mouth pain after the incident and did not have stomach problems at that time. *See* Appellant's App. at 52 (Harris says he had acid reflux beginning in February 2006); *id.* at 53 (Harris said he had "mouth pain" after the incident); *id.* at 54 (Harris says his acid reflux became painful after he returned to work following his successful grievance).

merely speculated that the December 15, 2005, incident was the starting point or a major factor in his illness; however, he by no means conceded that his condition was caused solely by that single exposure. Therefore, we conclude that the Board's finding that Harris admitted that the statute of limitations had run is not supported by the evidence.

 Furthermore, several statements from the Board's order suggest that the Board confused the issues and applied the wrong burden of proof. *See* Appellant's App. at 9 (finding number 7 states, "Plaintiff has failed to come forward with any evidence linking his condition of Helicobacter pylori infection and/or stomach cancer to his employment."); *id.* (issue number 1 states, "Whether Plaintiff sustained his burden of proving by credible evidence that the stomach cancer he contracted arose out of and in the course of his employment."); *id.* at 11 (in the discussion section, the Board states, "Plaintiff did not present any evidence or even allege that he had contracted stomach cancer in a manner consistent with the definition of occupational disease in Indiana Code § 22–3–7–10"); *id.* (conclusion number 1 states, "Plaintiff has failed to come forward with or indicate his ability to come forward with any medical evidence that his stomach cancer arose out of and in the course of his employment by Defendant.").

In this case, the statute of limitations issue is closely related to the issue of causation. If the case proceeds to a hearing on the merits, Harris will of course bear the burden of proof on the elements of his claim. To have the case dismissed without reaching the merits of his claim, United Water has to prove its alleged grounds for dismissal. Instead, it appears that the Board expected Harris to come forward with proof of causation in order to survive United Water's motion to dismiss.

Given the speculative nature of Harris's lay testimony and the lack of expert medical opinion supporting either party's theory of the case, we cannot say with certainty that the Board would have granted the motion to dismiss had it not erroneously found that Harris conceded a crucial point and held him to an erroneous standard. Therefore, we reverse the Board's order and remand for the Board to reconsider the motion to dismiss applying the correct burden of proof.

Reversed and remanded.

KIRSCH, J., and BRADFOARD, J., concur.