# FOR PUBLICATION



FILED
Jan 22 2015, 10:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIAM A. RAMSEY**
Murphy Ice LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**KEVIN W. KEARNEY**
Hunt Suedhoff Kalamaros LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SIN-MI WARD, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1405-EX-317 |
| | ) | |
| UNIVERSITY OF NOTRE DAME, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE WORKER'S COMPENSATION BOARD
The Honorable Linda P. Hamilton, Chairman
The Honorable A. James Sarkisian, Hearing Member
Application No. C-205644

**January 22, 2015**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Sin-Mi Ward appeals from an order of the Worker's Compensation Board ("the Full Board") deciding her application for adjustment of claim against the University of Notre Dame ("Notre Dame") for disability benefits arising from a work related injury. The Full Board adopted the findings and decision of the single hearing member awarding Ward permanent partial impairment ("PPI") benefits after finding that she had reached maximum medical improvement from her injury.

We affirm.

## ISSUES

Ward presents the following issues for our review:

I.    Whether the Full Board improperly considered an Independent Medical Examination ("IME") report of a physician who described Ward as "Oriental" in the report.

II.    Whether there is sufficient evidence to support the findings and conclusions of the Full Board.

III.    Whether the Full Board correctly found that Notre Dame was not required to reimburse Ward for unauthorized medical treatment.

## FACTS AND PROCEDURAL HISTORY

On August 17, 2008, Ward was employed by Notre Dame as a food service associate in a dining hall. On that date, Ward accidentally slipped on a floor on the premises injuring her foot and ankle in the course of her employment. Ward reported the injury and Notre Dame initially accepted Ward's claim as compensable, authorizing medical treatment for Ward's ankle injury. Ward's treatment included injections, pain management treatment, and surgery.

2

Ward received authorized medical treatment from August 17, 2008 through September 3, 2010, from her treating physician, Dr. Todd Graham, M.D. While Ward was receiving treatment for her injury, she received temporary total disability ("TTD") benefits from May 12, 2009 to June 10, 2009 and for missing work on August 24, 2009. Since Ward's average weekly wage was $256.48, her TTD rate was $171.07.

On July 26, 2010, Ward filed an Application for Adjustment of Claim disputing that her injuries had reached a permanent and quiescent state and that Notre Dame had paid all the benefits to which Ward was entitled. Among the disputed issues was whether Ward suffered from Reflex Sympathy Dystrophy ("RSD") or Complex Regional Pain Syndrome ("CRPS") as a result of her ankle injury.

In a letter dated September 3, 2010, Dr. Graham expressed his opinion that Ward suffered from chronic residual pain syndrome, but that her injury had reached maximum medical improvement. Dr. Graham found that Ward had a permanent work restriction requiring her to work light duty with an allowance each hour to perform activities while sitting. Ultimately, Dr. Graham assessed a PPI rating of 12% of the left lower extremity, which corresponded to a 5% rating of the whole person.

Ward disputed Dr. Graham's medical opinion, so she filed a petition with the Full Board for an order granting an IME. The Full Board granted Ward's petition and she was examined by the Full Board's appointed physician, Dr. Shaun Kondamuri, M.D., on January 24, 2011, at Notre Dame's expense. Dr. Kondamuri determined that Ward was not suffering from CRPS and that her injuries had reached maximum medical improvement. He also noted that Ward had been diagnosed with an anxiety disorder

3

"suggesting perhaps a possible psychologic [sic] component to her overall condition." Appellant's App. p. 346.

Ward also disputed Dr. Kondamuri's opinion. She retained the services of Dr. Eric M. Schreier, D.O., who conducted his own IME at Ward's expense on June 22, 2011. Dr. Schreier determined that Ward was not suffering from RSD and that her injuries had reached maximum medical improvement. He agreed with her work restrictions and also found that Ward appeared to have active depression due to her injury, but had a prior history of anxiety and depression. Dr. Schreier assessed a PPI rating of 15% of the foot below the knee which is the equivalent of a 6% PPI rating to the person as a whole. He further stated, "Her disability as related to this chief complaint appears to be materially greater than the allowable assigned impairment rating." *Id.* at 406.

On February 2, 2012, Ward was examined by Dr. Joseph Corey, M.D., Ph.D. Dr. Corey stated, "I think that the patient still may have [RSD] or [CRPS] in the left lower extremity." *Id.* at 375-76. He renewed a referral to Dr. Thomas Cheng, a pain specialist, to determine if Ward had CRPS. Dr. Cheng examined Ward on February 23, 2012, and determined that she was suffering from CRPS and that her pain was not currently controlled. Dr. Cheng again opined that Ward suffered from CRPS when he examined her on June 21, 2012.

A hearing was held on November 13, 2013 before a single hearing member. Ward and her husband, Ken, testified, exhibits were submitted into evidence, and the parties submitted a Stipulation of Facts and Stipulation of Issues. On November 19, 2013, the single hearing member entered an order finding that Ward's injuries had reached maximum

4

medical improvement, and Notre Dame was responsible for payment of only those medical expenses for authorized treatment incurred and unpaid prior to the determination that Ward's injury had reached maximum medical improvement. Ward's PPI rating was found to be 6% of the person as a whole. The single hearing member found that Ward's claim regarding treatment for her depression, anxiety, or cardiac related issues was not supported by sufficient medical evidence and found that Ward should bear the expense for that treatment.

Ward appealed the single hearing member's decision to the Full Board, before which she appeared *pro se*. At the meeting of the Full Board, Ward confirmed that she had been physically injured during the course of her employment at Notre Dame and noted that she had never been physically injured prior to the incident at Notre Dame. Her husband, Ken, who was also present at the hearing, asked why Dr. Kondamuri was allowed to refer to Ward as "Oriental" in his IME report and sought to have the report discredited because of the reference. The Full Board affirmed the findings and conclusions of the single hearing member. Additional facts will be set forth as needed. Ward now appeals.

## DISCUSSION AND DECISION

### I. CONSIDERATION OF IME REPORT

Ward argues that it was improper for the single hearing member and the Full Board to consider the IME report of Dr. Kondamuri. More specifically, she challenges Dr. Kondamuri's use of the term "Oriental" in his written description of her in the IME report. For reasons we state below, we find that Ward's argument has been waived for purposes of appeal.

5

Ward, who was represented by counsel at the time her claim was reviewed by the single hearing member, testified at the hearing but made no claim at that time challenging Dr. Kondamuri's report. Ken testified that he did not believe that the physician who examined Ward was Dr. Kondamuri because the physician they met in the waiting room appeared to be a different person than the person depicted in the picture of Dr. Kondamuri on display in the waiting room. Prior to the hearing before the single hearing member, Ward had stipulated to the admissibility of facts and exhibits, including Dr. Kondamuri's report. Therefore, the arguments made before the single hearing member did not concern the admissibility of the report containing Dr. Kondamuri's opinion about Ward's injury, and the descriptive reference was not challenged before the single hearing member.

"Courts generally favor stipulations that admit certain designated facts for the purpose of simplifying and expediting litigation." *Albright v. Four Winds Intern.*, 950 N.E.2d 1251, 1258 (Ind. Ct. App. 2011), *trans. denied* (2012). Here, the issue was the status of Ward's injury, not any racial bias in favor of or against Ward. The parties stipulated to the admissibility of the reports containing various doctors' opinions of the status of Ward's injury. Therefore, the argument has been waived for purposes of review.

Waiver notwithstanding, the descriptive reference had no bearing on Dr. Kondamuri's evaluation of Ward's injury and condition. Ward points to no evidence that Dr. Kondamuri's use of the term undermines the validity of his opinion on the nature and extent of her injury. Further, any claim of bias would have been relevant to the evaluation of Dr. Kondamuri's credibility, a task left for the single hearing member. The Full Board's Statement of Fact dated March 10, 2014, explains that no new evidence is ever offered at

Full Board hearings as their task is to determine whether the single hearing member's decision comports with the Worker's Compensation system, established case law, and recognized practices. The Full Board considered the arguments presented by both sides and issued its decision after reviewing the record. We find no error in the decision of the single hearing member or the Full Board on this issue.

## II. SUFFICIENCY OF THE EVIDENCE

Ward also challenges the sufficiency of the evidence supporting the single hearing member's and the Full Board's award. More specifically, Ward disagrees with the Full Board's award because she contends there is evidence that she suffers from RSD or CRPS, and the Full Board found that she had presented insufficient evidence to support that claim.

Before reaching the issues related to the Full Board's decision, however, we must determine the appropriate standard of review from the Full Board's award which was reached based on a paper record; *de novo* as is suggested by Ward, or deferential as is suggested by Notre Dame. For reasons we explain below, we apply a standard of review that is deferential to the Full Board's award.

In *Harris v. United Water Servs., Inc.*, 946 N.E.2d 35 (Ind. Ct. App. 2011), an appeal from the grant of a motion to dismiss, one of the issues we addressed was the appropriate standard of review to be used in an appeal from an administrative agency's ruling based on a paper record. We acknowledged that this Court has applied two different standards of review in appeals from an administrative agency's ruling in that context. In *Gerlach v. Woodke*, 881 N.E.2d 1006, 1009 (Ind. Ct. App. 2008), *aff'd on reh'g, trans. denied*, we applied the Trial Rule 12(B)(1) *de novo* standard of review. In *Fitzgerald v. U.S. Steel*,

892 N.E.2d 659, 662 (Ind. Ct. App. 2008), we applied the more deferential standard of review to the agency's determination.

Since those decisions, our Supreme Court's opinion in *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.,* 907 N.E.2d 1012 (Ind. 2009) was handed down, and we have found that decision instructive on the appropriate standard of review to be applied. In that case, the issue was the agency's decision to grant summary judgment for U.S. Steel in a dispute concerning the interpretation of a settlement agreement previously approved by the agency. In *Harris* we acknowledged that while "our supreme court [in *NIPSCO*] was also reviewing a paper record . . . it determined that a more deferential standard should apply in recognition of the agency's expertise in the subject matter[,]" and applied that standard of review. 946 N.E.2d at 39.

Although this appeal does not concern a ruling on a motion to dismiss or a ruling on a motion for summary judgment, but rather, an award by the Full Board based on a paper record, we apply the more deferential standard of review from *NIPSCO* that was also applied in *Harris*. This standard is also compatible and more consistent with the foundation of the statutory language concerning appeals from awards by the Full Board. Indiana Code section 22-3-4-8(b) (1986) states that "[a]n award by the full board shall be conclusive and binding as to all questions of the fact, but either party to the dispute may . . . appeal to the court of appeals for errors of law under the same terms and conditions as govern appeals in ordinary civil actions."

We have stated the more deferential standard of review as follows:

In reviewing a worker's compensation decision, an appellate court is bound

8

by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. We will not reweigh the evidence or reassess witness credibility. As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. The Board will only be reversed if it incorrectly interpreted the Act.

*Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009) (citations and quotations omitted), *trans. denied*.

The single hearing member and the Full Board considered the medical evidence presented by both sides and found certain evidence to be more credible. In particular, the single hearing member and the Full Board found the medical reports of Dr. Kondamuri, Dr. Graham, and Dr. Schreier to be more credible and persuasive than other evidence presented. Dr. Graham found that Ward had reached maximum medical improvement and that she suffered from what he described as chronic residual pain syndrome. Dr. Kondamuri found that Ward had reached maximum medical improvement and was not suffering from CRPS. Dr. Schreier found that Ward was not suffering from RSD and had reached maximum medical improvement. Although there was additional evidence from other doctors who found that Ward suffered from CRPS or RSD, we cannot say that the evidence before the single hearing member and the Full Board was undisputed and led to a contrary conclusion. We will not reweigh the evidence or reassess witness credibility. There was sufficient evidence to support the Full Board's award, which used the higher rating given by Dr. Schreier, the physician independently hired by Ward to conduct an

9

IME.

### III. UNAUTHORIZED MEDICAL TREATMENT

Ward also disputes the Full Board's decision that Notre Dame was not required to pay for unauthorized medical treatment Ward received. Ward's authorized medical treatment included injections, pain management treatment, and surgery. She also received treatment from other physicians regarding her ankle pain, but that treatment was not authorized by the Full Board and the examinations occurred after three doctors had determined that Ward had reached maximum medical improvement for her injury. Therefore, the Full Board's finding that Notre Dame was not responsible for any past or future unauthorized medical treatment was supported by the record.

Likewise, the Full Board's determination that Ward presented insufficient medical evidence to support her claim that Notre Dame should bear the expense of Ward's treatment for depression, anxiety, and cardiac issues, is supported by the record. The Full Board found that Ward did not provide sufficient evidence that those conditions arose out of or in the course of her employment. Although there was evidence in the medical reports that Ward was receiving treatment for those conditions, the Full Board agreed with the single hearing member that there was insufficient evidence to conclude that those conditions arose from Ward's work injury. Ward's argument amounts to an invitation to reweigh the evidence. We will not do so on appeal. *See Wright Tree Serv.*, 907 N.E.2d at 186.

### CONCLUSION

In light of the above, we affirm the trial court's decision.

Affirmed.

MATHIAS, J., and BROWN, J., concur.