**WRIGHT TREE SERVICE,**
**Appellant–Defendant,**

v.

**Juan HERNANDEZ, Appellee–Plaintiff.**

**No. 93A02–0812–EX–1111.**

Court of Appeals of Indiana.

June 8, 2009.

Transfer Denied Sept. 11, 2009.

611

Tricia G. Bellich, David A. Mack, Kopka, Pinkus, Dolin & Eads, Crown Point, IN, Douglas W. Meagher, Kopka, Pinkus, Dolin & Eads, Indianapolis, IN, Attorneys for Appellant.

Nathan B. Maudlin, New Harmony, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Wright Tree Service ("Wright") appeals from an adverse determination of the Indiana Worker's Compensation Board ("the Board") affirming the Single Hearing Member's Order awarding death benefits to the widow of Juan Hernandez ("Hernandez") who was an employee of Wright at the time of his death. Wright raises the following issue for our review: whether the Worker's Compensation Board erred by finding that Hernandez's death was compensable under the Worker's Compensation Act ("the Act") as "a death by accident arising out of and in the course of his employment" with Wright.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On October 4, 2005, Hernandez was employed as a manual laborer by Wright. At approximately 2:00 p.m. that day, he was loading tree limbs into a wood chipper when he was struck in the head and neck by a tree limb. The force of the blow from the tree limb knocked Hernandez's hard hat from his head and knocked Hernandez into the wood chipper. The wood chipper had no emergency hand brake to stop the machine. Hernandez suffered a one-inch gash on his neck. Although Hernandez complained of pain to his neck immediately after the accident, he continued to load limbs into the chipper. However, he had to stop and sit in the shade about five minutes after the accident. Several of Hernandez's co-workers asked him if he was feeling well and if he needed to go to a hospital, and the foreman, who arrived on the scene after the accident, ultimately drove Hernandez home.

When Hernandez arrived home sometime before 2:30 p.m., his wife observed that he did not look like he was feeling well. He told his wife that a limb had hit him in the head and that his employer had given him a pill. Hernandez then changed his clothes because he had been perspiring and went upstairs to his bedroom. Her-

nandez's wife heard him yell for her. When she found him collapsed on the bed and unresponsive, she yelled for a neighbor who started performing CPR. Her daughter-in-law called for an ambulance which was dispatched at 3:10 p.m. and arrived at 3:18 p.m.

When the paramedics arrived they found Hernandez was without a pulse and began counter shock treatment before transporting him to the Indiana Heart Hospital. Because he had been struck in the head by a tree limb he was given a CAT scan, which ruled out intracranial bleeding. Angiography revealed two occluded arteries with extensive clotting, which were successfully stented. However, Hernandez had suffered "severe irreversible hypoxic encephalopathy" or a lack of blood flow to the brain resulting in brain death. *Appellant's App.* at 5. Hernandez died on October 5, 2005.

The coronary angiography revealed that Hernandez "suffered from severe two-vessel coronary artery disease, which clearly predated his accident of October 4, 2005." *Id.* However, Hernandez appeared to be in good health and was not experiencing any signs or symptoms of a heart attack prior to his accident at work.

Hernandez's widow filed with the Board an Application for Adjustment of Claim on behalf of Hernandez on November 10, 2005 against Wright. *Id.* at 329. The claim sought compensation under the Act for Hernandez's death, alleging that his death was caused by the accident arising out of and in the course of his employment. The case was tried on December 5, 2007 before Single Hearing Member Diane Parsons Emswiller. The Single Hearing Member's Order was issued on January 22, 2008 finding that Hernandez was entitled to an award for death benefits. On February 19, 2008, Wright filed its application for review of the Single Hearing Member's

Order by the Full Board. After hearing arguments of counsel, the Board entered its order on October 10, 2008, affirming the Single Hearing Member's Order. Wright now appeals.

## DISCUSSION AND DECISION

The Worker's Compensation Board, as the trier of fact, has a duty to issue findings of fact that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind.Ct.App.2008). "In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." *Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. *Id.* We will not reweigh the evidence or reassess witness credibility. *Triplett*, 893 N.E.2d at 1116. "As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area." *Brown*, 892 N.E.2d at 646. The Board will only be reversed if it incorrectly interpreted the Act. *Id.*

The Indiana Worker's Compensation Act provides for compensation of injury or death by accident arising out of and in the course of employment. Ind. Code § 22-3-2-2. The claimant bears the burden of proving the right to compensation. *Id.; Bertoch v. NBD Corp.*, 813 N.E.2d 1159, 1161 (Ind.2004). "As a gen-

eral rule, the issue of whether an employee's injury or death arose out of and in the course of his or her employment is a question of fact to be determined by the Board." *Indiana Michigan Power Co. v. Roush,* 706 N.E.2d 1110, 1113 (Ind.Ct.App. 1999).

Wright first claims that Hernandez was performing "his usual and customary job," including "loading tree limbs into the chipper." *Appellant's Br.* at 9. Wright contends that it was "completely foreseeable that a laborer working for a tree service" would "occasionally be struck by a tree limb while performing his usual and customary work duties." *Id.* Wright appears to claim that Hernandez needed to show an event or happening "beyond the mere employment itself" in order to be eligible for benefits. *Id.* at 8.

 The statutory phrase "injury or death by accident" means "unexpected injury or death" and does not require an unusual event precipitating the death. *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969, 974 (Ind.1986). If the employee has a physical condition that renders him more susceptible than the average person to injury, an injury "arises out of employment" if there is a causal link to an injury sustained on the job. *Hansen v. Von Duprin, Inc.,* 507 N.E.2d 573, 576 (Ind.1987). Even if a preexisting condition contributed to the injury, the employee is entitled to recover for the full extent of the injury, including an aggravation or triggering of a preexisting injury, causally connected with the employment. *Id.* at 577. "Whether an injury resulted from an unusual event is not the dispositive question." *Bertoch,* 813 N.E.2d at 1162. "The issue is merely whether the injury itself was unexpected." *Id.*

 Here, Hernandez's death was the unexpected consequence of the usual exertion or exposure of Hernandez's job. At

2:00 p.m. he was loading tree limbs into a chipper that did not have a safety brake, when he was struck in the head and neck by a tree limb with such force that his hard hat came off. Hernandez suffered a one inch gash in his neck, felt a lot of pain, and had to sit in the shade five minutes after the incident. Hernandez did not look well at the scene or upon arriving at home sometime before 2:30 p.m. ultimately collapsing on his bed. Hernandez had no pulse when paramedics arrived at his home at approximately 3:18 p.m. We conclude under our standard of review that there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion that Hernandez's death occurred by accident arising out of and in the course of his employment with Wright and that the claim is compensable.

Further, Wright asserts that Hernandez's expert witness testimony is insufficient to carry his burden of proof. Wright claims that the record reveals no evidence that Hernandez suffered significant stress as a result of the accident, and that his preexisting condition was a noncompensable personal risk.

 Risks causing injury or death to an employee may be divided into three categories: 1) risks distinctly associated with the employment; 2) risks personal to the claimant; and 3) "neutral" risks which have no particular employment or personal character. *Roush,* 706 N.E.2d at 1114. "Generally, the risks that fall in the first and third categories are covered by the Indiana Worker's Compensation Act. However, harms that arise in the second category, from risks personal to the claimant/employee, are universally noncompensable." *Id.* (citing *Peavler v. Mitchell &*

*Scott Mach. Co.,* 638 N.E.2d 879, 881 (Ind. Ct.App.1994)).

Wright contends that the only evidence submitted by Hernandez on the issue of his stress level at the time of the accident was a letter written by Dr. Donald A. Rothbaum. In Dr. Rothbaum's letter to Hernandez's attorney he states as follows:

> I feel that the patient being struck by a tree branch may have caused significant anxiety and stress which may have precipitated his heart attack and cardiac arrest at home with subsequent brain death. From your brief description Mr. Hernandez appeared to be feeling fine with no symptoms of heart disease prior to the incident.... Certainly, any type of significant emotional stress or even injury can precipitate a heart attack in a patient with underlying coronary artery disease. As you mentioned previously, this is seen with certain injuries, especially those that produce extreme anxiety. We also see similar situations in patients undergoing stress such as non cardiac surgery or those experiencing a non cardiac illness. In addition that patient had extensive thrombus or blood clot[sic] in two different arteries when he was taken emergently to the cardiac catheterization laboratory by Dr. Ed Harlamert. Acute thrombotic myocardial infarction can be seen in the setting of extreme stress with coronary artery disease spasm (triggered by the stress situation).... Therefore, I feel that it is more than just coincidental that the patient experienced a heart attack when he was not feeling well after his work related injury.

*Appellant's App.* at 22. Wright attacks this evidence claiming that: 1) Dr. Rothbaum's knowledge of the events was limited to information provided by Hernandez's attorney; 2) there is no evidence that Dr. Rothbaum reviewed any of Hernandez's medical records or relied on material normally relied upon by medical experts when rendering a medical opinion; 3) Dr. Rothbaum was under the impression that Hernandez had been hit with a "tree branch," instead of a tree limb; and 4) Dr. Rothbaum's opinion is not rendered within a reasonable degree of medical certainty. *Appellant's Br.* at 13. Accordingly, Wright argues that this evidence standing alone is insufficient to support the Board's conclusion that the heart attack was caused by stress induced when the limb struck Hernandez. Wright points to the testimony of its own medical expert, and that Hernandez refused medical treatment at the job site, to support this argument.

Wright's argument in large part is merely an attempt to have this Court reweigh the evidence, which we will not do. The fact-finder was in the best position to determine if Dr. Rothbaum's opinion was based upon faulty or incomplete information and how much weight to assign to that opinion. The Board incorporated by reference the Single Hearing Member's conclusions including the following:

> The accident Hernandez experienced was of a type that could have easily produced significant emotional trauma. He was operating a wood chipper when he was struck in the head and neck by a tree limb, with force that it knocked his hard hat off and knocked him into a chipper with no safety brake. This accident clearly could have caused sufficient anxiety and stress so as to precipitate either the plaque rupture or coronary spasm which led to Hernandez' [sic] heart attack and the greater weight of the evidence establishes that this is, indeed, most likely what happened.

*Appellant's App.* at 6.

Wright takes issue with the Single Hearing Member's statement that the force of the limb "knocked him into a

chipper." *Id.* Assuming that this controverted fact is not supported by the record, the conclusion is not fatally undermined. Hernandez was in the process of loading limbs into a chipper without a safety brake when he was struck in the head and the neck causing his hard hat to come off, knocking him into the wood chipper, and leaving a one-inch gash in Hernandez's neck. The conclusion that this event caused sufficient anxiety and stress to precipitate Hernandez's fatal heart attack remains supported by sufficient evidence.

 While acknowledging that it stipulated to the admission of the exhibit containing the controverted fact, Wright also takes issue with the evidence that the chipper did not have a safety brake. One of the stipulated exhibits was the translated statement of Adolfo Miranda O., which included his statement that the chipper at issue did not have a brake. *Appellant's App.* at 14. Courts generally favor stipulations that admit certain designated facts for the purpose of simplifying and expediting litigation. *Anacomp, Inc. v. Wright,* 449 N.E.2d 610, 615 (Ind.Ct.App.1983). Even though proper stipulations may be conclusive and binding as to all matters contained and necessarily included therein, such stipulations will not be construed to admit facts that were obviously intended to be controverted. *Id.* Accordingly, Wright stipulated to the admissibility of the exhibit. However, if Wright intended to attack the facts contained therein, Wright should have produced evidence to dispute the assertion that the chipper did not have a brake. The fact that the chipper did not have a brake was in the record, and the Worker's Compensation Board did not err by relying on that fact in reaching its decision.

Furthermore, our Supreme Court has held that in the instance where a doctor's testimony falls short of reasonable medical certainty, such evidence cannot by itself support a verdict, the testimony can serve as probative when considered in conjunction with other relevant evidence. *See Bertoch,* 813 N.E.2d at 1162 (citing *Noblesville Casting Div. of TRW, Inc. v. Prince,* 438 N.E.2d 722, 731 (Ind.1982)). Here, Dr. Rothbaum's opinion was considered with the following evidence: Hernandez was a healthy man, was never sick, had no pre-accident heart problems, and had no medical problems for which he regularly sought medical treatment; Hernandez experienced neck pain immediately after the accident and was so ill that he had to stop working and sit in the shade and rest; multiple employees asked him if he needed to go to the hospital; Hernandez's supervisor drove him home, and he was sweating, ill, and in pain when he arrived home. Dr. Rothbaum's opinion, considered with the other evidence presented, constituted, sufficient evidence to support the conclusion that Hernandez's claim is compensable.

Lastly, Wright takes issue with Hernandez's assertion that if "shown the correct facts, even Dr. Jeffrey A. Breall, the physician who testified on Wright's behalf that the heart attack was not related to the injury, would believe that the limb incident triggered Hernandez' heart attack." *Appellee's Br.* at 9. Wright contends that the testimony relied upon by the Single Hearing Member in reaching her conclusion was in response to hypothetical and speculative questions.

The record before us reflects that Dr. Breall reviewed Hernandez's records and based his opinion that Hernandez's heart attack was coincidental to his injury, on the belief that Hernandez collapsed at home some three hours after the tree limb incident. *Appellant's App.* at 23. Dr. Breall's letter indicated that "[Hernandez] arrived home approximately 3 hours later.

Shortly after arriving home he was found with agonal breathing and in ventricular fibrillation." *Id.* In his deposition testimony, Dr. Breall stated that if the period of time between the incident and the 911 were shortened to forty minutes instead of hours, it might have an impact on his conclusion. This questioning was proper for cross-examination and helpful for determining how much weight to give to the expert's testimony and conclusions. There is no error.

Affirmed.

RILEY, J., and BAILEY, J., concur.