## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 11 2017, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Maria E. Linstrom
Mundelein, Illinois

ATTORNEY FOR APPELLEE

Sonia Das
Inman & Fitzgibbons, Ltd.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maria Linstrom,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Golden Living Center - Woodlands,<br>*Appellee-Defendant.* | April 11, 2017<br><br>Court of Appeals Case No. 93A02-1607-EX-1645<br><br>Appeal from the Full Worker's Compensation Board of Indiana<br><br>The Honorable Linda Peterson Hamilton, Chair<br><br>Application No. C-213723 |

**Bradford, Judge.**

# Case Summary

[1] In November of 2011, Appellant-Plaintiff Maria Linstrom was employed by Appellee-Defendant Golden Living Center - Woodlands ("Golden Living"). On November 4, 2011, Linstrom fell at work and was injured ("the November 4, 2011 incident"). She subsequently filed a claim under the Indiana Worker's Compensation Act ("the Act"). Golden Living provided compensation for medical bills relating to some of Linstom's claimed injuries. Golden Living, however, disputed whether Linstrom's claimed neck/cervical spine injury arose from or was caused by the November 4, 2011 incident.

[2] The parties presented evidence relating to the claimed neck/cervical spine injury to a Single Hearing Member of the Indiana Worker's Compensation Board (the "Single Hearing Member") who, following a hearing and review of the evidence, determined that Linstrom had failed to meet her burden of proving that the claimed neck/cervical spine injury arose out of or was caused by the November 4, 2011 incident. Linstrom appealed this decision to the Full Worker's Compensation Board ("the Board"). Following a hearing, the Board issued an order in which it also concluded that Linstrom had failed to meet her burden of proving that the claimed neck/cervical spine injury arose out of or was caused by the November 4, 2011 incident.

[3] Linstrom challenges the Board's order on appeal, arguing that the Board erred by (1) allowing misconduct during the course of the litigation, including the suppression of evidence, presentation of false evidence, and distortion of the

facts; (2) failing to award benefits for her claimed neck/cervical spine injury, which she maintains arose out of or was caused by the November 4, 2011 incident; and (3) failing to make an appropriate Permanent Partial Impairment ("PPI") assessment. Finding no error by the Board, we affirm.

# Facts and Procedural History[1]

[4] In November of 2011, Linstrom was working at Golden Living in Newburgh. On November 4, 2011, Linstrom was injured during the course of her employment after her feet became tangled under a patient's bed, causing her to fall. As a result of the fall, Linstrom suffered injuries to her right knee and right shoulder. Linstrom filed a claim under the Act and Golden Living provided compensation for medical bills relating to Linstrom's knee and shoulder injuries. Linstrom subsequently claimed that she had also suffered a neck/cervical spine injury as a result of the November 4, 2011 incident. Golden Living disputed whether the claimed neck/cervical spine injury arose out of or was caused by the November 4, 2011 incident.

[5] On or about June 15, 2015, the parties submitted their dispute relating to the claimed neck/cervical spine injury to a Single Hearing Member of the Board. On November 5, 2015, the Single Hearing Member issued an award in which

---

[1] Golden Living has filed a motion to strike certain portions of Linstrom's Appendix and Appellate Brief. Finding the assertions contained in this motion to be meritorious, we hereby grant Golden Living's motion in an order handed down simultaneously with this memorandum decision.

the Single Hearing Member found that Linstrom had not met her burden of proving that the claimed neck/cervical spine injury arose out of or was caused by or arose from the November 4, 2011 incident.

[6]     On December 1, 2015, Linstrom requested that the Board review the Single Hearing Member's decision. The Board held a hearing on the matter on May 16, 2016. Following the hearing, on July 7, 2016, the Board issued an order in which it found and concluded as follows:

FINDINGS OF FACT

1.      The facts do not support that Plaintiff injured her neck in her fall on November 4, 2011. The records reflect that throughout Plaintiff's care, she was detailed about reporting her pain complaints and limitations, but between November 4, 2011 and approximately January 2013, she had no reports of pain or an injury to the neck or cervical spine area after her fall at work. Further, stenosis is typically a degenerative process and there is no evidence that Plaintiff sustained an acute trauma that would be capable of causing stenosis.

2.      The physicians treating Plaintiff, Dr. Nenadovich and Dr. Schwartz, believed her neck was unrelated to the November 4, 2011 injury, and that there was no surgical pathology in the neck that was causally related to the work injury, namely, the right shoulder complaints.

3.      Dr. Tyndall's March 9, 2015 record does not establish causation between Plaintiff's neck/cervical spine complaints and her November 4, 2011 injury. The report fails to offer any explanation as to how or why Plaintiff's pain complaints are related to a 2011 injury, but merely relies on Plaintiff's report of her own medical history, which report is inconsistent with the evidence submitted by the parties. As with Dr. Nenadovich and

Dr. Schwartz, Dr. Tyndall appeared to be looking for a link between the right shoulder injury and the neck complaints. The MRI ordered by Dr. Tyndall and performed in January 2015 showed no new findings and was essentially consistent with the MRI interpreted by Dr. Nenadovich in 2013. There is no cord compression and the left-sided findings on the MRI do not correlate with Plaintiff's right sided work injury. Dr. Tyndall states "I believe the cervical disk herniation at C5-6 was the source of her right shoulder pain, which is the reason why the shoulder surgery did not improve her symptoms." However, Dr. Tyndall's report does not support any contention that Plaintiff injured her neck/cervical spine in the November 4, 2011 incident at work. Moreover, Dr. Tyndall fails to explain how the left-sided findings on the MRI could create symptoms on the right shoulder, and therefore, the report is not credible.

4. Plaintiff sustained two intervening incidents that sever any connection between her neck complaints and the November 4, 2011 injury. First, on April 26, 2013, Plaintiff reported that she had to apply the brakes in her vehicle very hard to avoid a motor vehicle collision. As a result of that activity, she complained of severe neck pain. On March 19, 2015, Plaintiff sustained a work[-]related injury while working for another employer. The injury involved her right shoulder. Plaintiff's March 19, 2015 work injury to her right shoulder while working for another employer represents an independent intervening agency that breaks the chain of causation. The injury occurred to the same body part that was involved in the November 4, 2011 [incident]. If the only link between the cervical spine condition and the November 4, 2011 incident is the shoulder injury, but the causal connection of the shoulder injury is broken by the subsequent injury, there is insufficient evidence to prove causation for the cervical spine.

5. Plaintiff contends she has complaints of pain, locking, and giving out in her right knee. Although these complaints may exist, the evidence submitted shows very few reports [of] on

going knee problems after Plaintiff was discharged by Dr. Levenda. While she did report some discomfort in the right knee, after February 2013, these instances are limited to one or two reports of knee complaints. On examination, Plaintiff was found to have full range of motion, and no edema. She walked without any limp. During both FCEs, she exhibited the ability to crouch, squat, and perform other movements with her knee. Plaintiff is not receiving medical treatment for her knee and Plaintiff has not presented any evidence that her treatment plan is incomplete or otherwise needs to be supplemented due to the 2011 injury. Plaintiff has not presented evidence demonstrating a loss of function of her knee.

6.     There is no evidence demonstrating medical necessity of additional medical treatment as to Plaintiff['s] right shoulder, right wrist, right hip, and low back and right knee. There is no evidence to support an award for palliative measures to the Plaintiff.

7.     Plaintiff has not presented any medical opinion supporting an award for permanent partial impairment other than the opinions contained in the Joint Medical Exhibit.

8.     Plaintiff is entitled to compensation equal to the 6% whole person permanent partial impairment rating assigned by Dr. Schwartz due to her shoulder injury. Plaintiff is not entitled to additional compensation for her other work-related injuries, based on the opinions of Dr. Levenda and Dr. Nenadovich that Plaintiff has a 0% PPI for her right knee, hip and spine injuries.

CONCLUSIONS OF LAW

1.     The burden of proof to establish an entitlement to worker's compensation benefits is on the Plaintiff. Indiana Code §22-3-2-2(a). In the present case, Plaintiff has not met her burden of proving an entitlement to worker's compensation benefits because the evidence does not establish that she suffered a neck

or cervical spine injury on November 4, 2011. Plaintiff has not demonstrated a need for additional medical treatment for her right shoulder and right knee.

2.     In the present case, it may well be that Plaintiff has a condition in the neck/cervical spine for which medical treatment is needed. However, the Single Hearing Member is not persuaded that the evidence sufficiently establishes medical causation.

3.     Evidence or records that merely mention a workplace injury as part of a patient's medical history are insufficient to establish causation for purposes of obtaining worker's compensation benefits. Dr. Tyndall's report, which mentions Plaintiff's work injury and relies on Plaintiff's self-report that her neck was injured in that incident, does not offer evidence of sufficient weight to support a neck injury occurring on November 4, 2011.

4.     Any need for treatment to Plaintiff's right shoulder is more likely than not related to her March 19, 2015 injury rather than the work injury at hand in this case.

5.     The phrase "maximum medical improvement," also designated "quiescence" in the context of worker's compensation, essentially means that a worker has achieved the fullest reasonably expected recovery with respect to a work[-]related injury. The evidence shows that Plaintiff has reached maximum medical improvement for all her work-related injuries.

6.     Plaintiff is entitled to have paid on her behalf or be reimbursed for all statutory medical expenses associated with the injuries that have been deemed compensable herein as well as for that care and treatment overseen and directed by Defendant.

7.     Plaintiff is additionally entitled to be reimbursed for any mileage necessitated by medical treatment for any compensable

injuries when such treatment occurred outside the county of injury.

Appellant's App. Vol. I, pp. 6-9.

# Discussion and Decision

On appeal, Linstrom contends that the Board erred by (1) allowing misconduct during the course of the litigation, including the suppression of evidence, presentation of false evidence, and distortion of the facts; (2) failing to award benefits for her claimed neck/cervical spine injury, which she maintains was caused by the November 4, 2011 incident; and (3) failing to make an appropriate PPI assessment.

## I. Standard of Review

The Worker's Compensation Board, as the trier of fact, has a duty to issue findings of fact that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind. Ct. App. 2008). "In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." *Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. *Id.* We will not reweigh the evidence or reassess witness credibility. *Triplett*, 893 N.E.2d at 1116. "As to the Board's interpretation of the law, an appellate court employs a deferential standard of

review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area." *Brown*, 892 N.E.2d at 646. The Board will only be reversed if it incorrectly interpreted the Act. *Id.*

*Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009).

[9]     The Indiana Worker's Compensation Act provides for compensation of injury or death by accident arising out of and in the course of employment. Ind. Code § 22-3-2-2. The claimant bears the burden of proving the right to compensation. *Id.*; *Bertoch v. NBD Corp.*, 813 N.E.2d 1159, 1161 (Ind. 2004). "As a general rule, the issue of whether an employee's injury or death arose out of and in the course of his or her employment is a question of fact to be determined by the Board." *Indiana Michigan Power Co. v. Roush*, 706 N.E.2d 1110, 1113 (Ind. Ct. App. 1999).

*Id.* at 186-87.

## II. Whether the Board Erred by Allowing Misconduct During the Course of Litigation

[10]  Linstrom asserts that the Board erred by allowing misconduct during the course of the litigation. Linstrom classifies this alleged misconduct as the suppression of evidence, presentation of false evidence, and distortion of facts. In support of this contention, Linstrom asserts that "the Medical Exhibit presented to both the Single Hearing Member and the Full Worker's Compensation Board failed to include the medical records for that period of time that make the case for Plaintiff's neck injury." Appellant's Br. p. 17. Linstrom also asserts that Golden Living's attorney conceded during the hearing before the Board that

"not all medical records were disclosed to the Single Hearing member and to the Full Board." Appellant's Br. p. 20. Linstrom fails to acknowledge, however, that she, not Golden Living, had the burden to present any evidence supporting her claim to the Single Hearing Member and the Board. *See* Ind. Code § 22-3-2-2(a) (providing that in Worker's Compensation cases, the burden of proof is on the employee and that proof by the employee of one element of a claim does not create a presumption in favor of the employee with regard to another element of the claim); *see also Bertoch*, 813 N.E.2d at 1161 (providing that the "claimant bears the burden of proving the right to compensation").

[11] In addition, Linstrom does not specify what proffered evidence was allegedly suppressed by the Board or explain what false or distorted evidence the Board allowed Golden Living to submit. Linstrom's argument seems to be based solely on her assertion that the Board somehow erred because there were additional medical records which were not submitted by either party. Again, Linstrom, and not Golden Living, bore the burden of proving her claim. *See* Ind. Code § 22-3-2-2(a); *Bertoch*, 813 N.E.2d at 1161. Given the lack of argument pointing to any specific act or omission committed by the Board, we cannot say that the Board erred in this regard.

## III. Whether the Board Erred by Determining that Linstrom Failed to Prove that the Claimed Neck/Cervical Spine Injury Arose Out Of or Was Caused By the November 4, 2011 Incident

[12] Linstrom asserts that the Board erred in finding that she was not entitled to recover for her claimed neck/cervical spine injury. Specifically, Linstrom argues that the Board erroneously determined that she failed to prove that the claimed neck/cervical spine injury arose out of or was caused by the November 4, 2011 incident.

[13] In *Ward v. University of Notre Dame*, 25 N.E.3d 172 (Ind. 2015), *trans. denied*, we reviewed an employee's challenge to the determination of the Board regarding causation. In affirming the findings and conclusions of the Board, we stated the following:

> The single hearing member and the Full Board considered the medical evidence presented by both sides and found certain evidence to be more credible. In particular, the single hearing member and the Full Board found the medical reports of Dr. Kondamuri, Dr. Graham, and Dr. Schreier to be more credible and persuasive than other evidence presented. Dr. Graham found that Ward had reached maximum medical improvement and that she suffered from what he described as chronic residual pain syndrome. Dr. Kondamuri found that Ward had reached maximum medical improvement and was not suffering from CRPS. Dr. Schreier found that Ward was not suffering from RSD and had reached maximum medical improvement. Although there was additional evidence from other doctors who found that Ward suffered from CRPS or RSD, we cannot say that the evidence before the single hearing member and the Full

Board was undisputed and led to a contrary conclusion. We will not reweigh the evidence or reassess witness credibility. There was sufficient evidence to support the Full Board's award, which used the higher rating given by Dr. Schreier, the physician independently hired by Ward to conduct an IME.

*Ward*, 25 N.E.3d at 178.

[14] In the instant matter, Linstrom introduced medical records which she argues showed that her claimed neck/cervical spine injury was caused by the November 4, 2011 incident. However, similar to the situation presented in *Ward*, the evidence which Linstrom relies on, at most, only indicates that the evidence before the Board could have potentially led to a different result.

[15] In finding that Linstrom had failed to prove that the claimed neck/cervical spine injury arose out of or was caused by the November 4, 2011 incident, the Board relied on evidence which demonstrates that although Linstrom was detailed about reporting her pain complaints and limitations, the medical records dated between November 4, 2011 and approximately January of 2013 do not contain any reports of pain or an injury to the neck or spine. In addition, with respect to the claimed neck/cervical spine injury, the record indicates that, at some point, Linstrom was diagnosed with stenosis, a typically degenerative condition. However, as the Board found, the record is devoid of any evidence indicating that Linstrom suffered an acute trauma that would be capable of causing stenosis.

[16]     The Board also relied on the opinions of Drs. Nenadovich and Schwartz, both of whom treated Linstrom following the November 4, 2011 incident. Both Drs. Nenadovich and Schwartz opined that Linstrom's claimed neck/cervical spine injury was unrelated to the November 4, 2011 incident. Drs. Nenadovich and Schwartz also opined that there was no surgical pathology in the neck that was causally related to the work injury.

[17]     Further, to the extent that Linstrom relies on the medical records relating to her treatment by Dr. Tyndall, such records are insufficient to prove a causal link between the claimed neck/cervical spine injury and the November 4, 2011 injury. To the extent that the records relating to Dr. Tyndall's treatment of Linstrom could be read to have found a causal connection between the claimed neck/cervical spine injury and the November 4, 2011 incident, review of these records demonstrates that Dr. Tyndall relied on Linstrom's report of her medical history in creating the records. These records did not contain any independent findings relating to causation and did not offer any explanation as to how or why Linstrom's claimed neck/cervical spine injury was caused by the November 4, 2011 incident.

[18]     The Board considered the disputed medical evidence presented by the parties and found the opinions of Drs. Nenadovich and Schwartz to be credible. We will not reweigh the evidence or reassess witness credibility on appeal. *Id*. Given the medical records submitted to the Board by the parties, we conclude that there was sufficient evidence to support the Board's findings and conclusions.

## IV. Whether the Board Failed to Make an Appropriate PPI Assessment

[19] Linstrom also asserts that the Board erred in awarding PPI compensation. We have previously concluded that the burden of providing a PPI rating lies with the employee "only where the employee disagrees with the determination provided by the employer's physician." *Mem'l Hosp. v. Szuba*, 705 N.E.2d 519, 524 (Ind. Ct. App. 1999).

[20] Review of the record reveals that the parties stipulated to evidence demonstrating that Linstrom had been assigned a 0% PPI rating for her knee injury and a 6% PPI rating for her right shoulder injury. Linstrom has not provided any medical opinions or pointed to any evidence which would tend to suggest that a different PPI rating is appropriate for her knee or shoulder injuries. Further, to the extent that Linstrom argues that the Board erred by failing to make a PPI assessment with regard to her claimed neck/cervical spine injury, we conclude that no such assessment was necessary given Linstrom's failure to prove that her claimed neck/cervical spine injury arose out of or was caused by the November 4, 2011 incident.

# Conclusion

[21] In sum, we conclude that the record is devoid of any indication that the Board allowed misconduct during the course of the litigation, erroneously failed to award benefits for Linstrom's claimed neck/cervical spine injury, or

erroneously failed to make an appropriate PPI assessment.  As such, we affirm the judgment of the Board.

[22]     The judgment of the Full Worker's Compensation Board of Indiana is affirmed.


Najam, J., and Riley, J., concur.