## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David Van Gilder
Van Gilder & Trzynka, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Larry L. Barnard
Grant A. Liston
Carson Boxberger LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan Recker,

*Appellant-Plaintiff,*

v.

City of Fort Wayne,

*Appellee-Defendant.*

February 28, 2018

Court of Appeals Case No.
93A02-1708-EX-1973

Appeal from the Indiana Worker's Compensation Board

The Honorable Linda Peterson Hamilton, Chairman

Trial Court Cause No.
C-227162

**Pyle, Judge.**

## Statement of the Case

[1]     Ryan Recker ("Recker") appeals the order of the Indiana Worker's

Compensation Board ("the Board") denying his application for worker's

compensation benefits. He specifically argues that the Board erred in concluding that his vertebral artery dissection and cerebellar infarct or stroke were not injuries arising out of his employment with the City of Fort Wayne ("the City"). Concluding that substantial evidence and reasonable inferences support the Board's conclusion, we affirm the Board's determination.

We affirm.

## Issue

Whether the Board erred in denying Recker's application for worker's compensation benefits.

## Facts

Recker was employed as a firefighter trainee by the City from February to May 2014. The physical training in Recker's program was rigorous. For example, while wearing firefighting gear that included bunker pants, a dummy oxygen tank, and a helmet, trainees had to demonstrate the ability to carry loads weighing 75 pounds and to drag loads weighing 165 pounds.

During physical training in March 2014, Recker began to experience neck and shoulder pain. In April, Recker began to experience back pain.[1] He saw Dr. Caleb Suciu ("Dr. Suciu"), a chiropractor, in April for groin, knee, and back

---

[1] Recker had previously suffered from lower back pain in 2011.

pain. At an April 25 visit, Dr. Suciu noted that Recker's ear was red and that he had severe shoulder pain.

[5] At the end of April, Recker went to BHS Clinic North because of continued back pain. The notes from his visit do not mention that he complained about neck pain. On April 30, 2014, Recker contacted his supervisor and reported that "his back was locked up [and] he couldn't get out of bed." (Tr. 50). In early May 2014, Recker voluntarily quit the training program. When he returned to BHS Clinic North a few days later, Recker reported that his back pain was improving, but he did not mention neck pain.

[6] On May 14, 2014, Recker saw his primary care physician, Dr. Joseph Maddox ("Dr. Maddox") for anxiety and panic attacks. He told Dr. Maddox that he had been unable to get out of bed due to his anxiety and that he had had difficulty sleeping. At that time, Recker reported no neck pain, dizziness, seizures, syncope, light-headedness, or nausea.

[7] Three days later, on May 17, Recker awoke with acute neurological symptoms including dizziness, nausea, vomiting, and gait imbalance. He was taken to a hospital emergency room where he was diagnosed with a vertebral artery dissection and a cerebellar infarct ("stroke"). The medical report completed by Dr. Madhav Bhat ("Dr. Bhat") stated that Recker had had "neck pain for [four] weeks which came on following exercises for firefighting drill wearing []a helmet [four] weeks ago." (App. 36).

[8]     In October 2014, Recker filed an application for adjustment of claim with the Board, wherein he described his injury as follows:

> [Recker] was in intense training at [the] Fire Academy including daily cross fit workouts without rest in full fire gear. He began experiencing neck pain in April 2014. On morning of 5/17/14, he woke up with severe headache/neck pain/nausea and lost consciousness. At ER he was diagnosed with vertebral artery dissection with cerebral infarction.

(App. 5). The gravamen of his claim was that his vertebral artery dissection and stroke were injuries caused by his fire department training.

[9]     A single hearing member heard Recker's claim in January 2017. Two medical documents were admitted into evidence. The first document was a one-page letter from Dr. Bhat, which stated that Recker's "right vertebral artery dissection [was] attributed to trauma of exercising with a helmet for a fire fighting drill and [was] unrelated to chiropractic adjustment on the thoracic spine." (App. 38).

[10]    The second document was a ten-page report completed by Dr. Timothy Herron ("Dr. Herron"), who had performed an independent neurological evaluation on Recker. Dr. Herron's report provides, in relevant part, as follows:

> Opinion: In my opinion, Mr. Recker's right vertebral dissection and subsequent cerebellar stroke were spontaneous and not due to his training activities for the Ft. Wayne Fire Department in 2014.
>
> Rationale: Vertebral artery dissection (VAD) is due to a tear of the inner wall of the vertebral artery. The term traumatic VAD is

used to describe dissection that occurs in the setting of significant blunt or penetrating trauma. Spontaneous VAD refers to those cases in which no significant trauma or traumatic event can be identified. Though spontaneous VAD occurs in the absence of any significant trauma, or identifiable trauma, patients may have a history of trivial or minor injury involving twisting or distortion movements of the cervical spine leading to neck pain, headache and subsequent dissection of the artery. As blood flows into the tear of the inner wall, a bulge forms causing partial or complete occlusion of the artery. This leads to a slowing of blood flow and the formation of blood clots that can propagate into brain tissue resulting in a stroke. VAD is usually an acute painful neurological event due to the tear in the wall of the artery and stroke symptoms that often follow. Stroke and neurological symptoms due to VAD usually occur[] acutely, within days, but cases have been reported in which neurological symptoms are delayed for longer periods of time.

In Mr. Recker's case, there is no history of any sudden, twisting or distortion movements of the cervical spine during his training at the Ft. Wayne Fire Dept. therefore there is no clear-cut mechanism linking his training to subsequent VAD.

In my opinion, Mr. Recker's right VAD more likely than not occurred on or about 5/17/14 at which time he presented acutely with the classic symptoms of VAD: severe headache, photophobia, neck pain, nausea, dizziness and difficulty swallowing. Though Mr. Recker reported to the ER physician on 5/17/14 that he had a several-week history of posterior right neck pain, there is no corroboration of this in the medical records. Specifically, [three] days earlier, on 5/14/14, Mr. Recker was seen by his primary care physician, Joseph Maddox, M.D., at which time there was no documentation of any neck pain, headache or other neurological symptoms. On 5/5/14 and 4/30/14, Mr. Recker was seen at the BHS Clinic North and reported low back pain, but no neck pain, headaches or other neurological symptoms.

Approximately [three] weeks earlier on 4/15/14, Mr. Recker reported right shoulder pain, neck pain and stiffness to his chiropractor, Dr. Suciu, but there is no further documentation that this symptom was continuous or persistent prior to the time of his acute presentation 5/17/14.

Because there is no documentation of any persistent neck pain, headaches or neurological symptoms following Mr. Recker's training with the Ft. Wayne Fire Dept. terminating on 5/1/14, in my opinion, Mr. Recker's right VAD and cerebellar stroke are not causally related to his training activities.

(App. 39-48).

[11]     After hearing evidence, the single hearing officer denied Recker's claim in a detailed order that provides, in relevant part, as follows:

21.  At least eighteen days elapsed between the last possible date of work-related physical activity and the acute onset of [Recker's] neurological symptoms, and over three weeks elapsed between the last mention of [Recker's] right shoulder pain in the medical records and the acute onset of his neurological symptoms. During the intervening time period, [Recker] was seen for low back pain or anxiety on three occasions without mention of neck or shoulder symptoms.

22.  In light of the delay between [Recker's] employment activity and the acute onset of his neurological symptoms, [Recker's] condition may have occurred spontaneously after his employment duties ended.  Alternatively, [Recker's] symptoms may have become discernible during the course of his employment without being caused by his employment.  Here, the evidence most favorable to [Recker] is that his symptoms began during the course of training activity involving motion of the neck, but in the absence of traumatic event or unusual strain.

* * * * *

24. The Board concludes by a preponderance of the evidence that [Recker's] vertebral artery dissection and stroke did not arise out of his employment with [the City].

(App. 9-10).

Recker filed an application for review by the full Board in March 2017. Five months later, in August 2017, the full Board issued an order affirming the single hearing officer's denial of Recker's claim. Recker now appeals.

## Decision

Recker argues that the Board erred in denying his application for worker's compensation benefits. Specifically, he contends that there is not substantial evidence supporting the Board's conclusion that his vertebral artery dissection and stroke were not injuries arising out of his employment with the City.

The Board, as the trier of fact, has a duty to issue findings of fact that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Wright Tree Service v. Hernandez*, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009), *trans. denied.* In reviewing a worker's compensation decision, we are bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Id.* We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. *Id.* We

will not reweigh the evidence or reassess witness credibility. *Id.* As to the Board's interpretation of the law, we employ a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. *Id.* The Board will only be reversed if it incorrectly interpreted the Worker's Compensation Act ("the Act"). *Id.*

The Act requires employers to provide their employees with compensation for injury or death by accident arising out of and in the course of employment. IND. CODE § 22-3-2-2. An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Outlaw v. Erbick Prods. Co., Inc.,* 742 N.E.2d 526, 530 (Ind. Ct. App. 2001), *trans. denied.* The nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Manous v. Manousogianakis*, 824 N.E.2d 756, 763 (Ind. Ct. App. 2005). As a general rule, the issue of whether an employee's injury or death arose out of and in the course of his or her employment is a question of fact to be determined by the Board. *Wright Tree Service,* 907 N.E.2d at 186. The claimant bears the burden of proving his right to compensation. *Id.*

Here, Recker contends that there is not substantial evidence supporting the Board's conclusion that his vertebral artery dissection and stroke were not injuries arising out of his employment with the City. However, we agree with

the City that Recker's argument "constitutes nothing more than a veiled attempt to ask this Court to reweigh the evidence and to find that the opinion of Dr. Bhat is more persuasive than that of Dr. Herron. This Court simply is not permitted to do so." Appellee's Br. at 12.

[16] Rather, our review of the evidence reveals that Recker visited doctors and clinics from the end of April until the middle of May 2014. During those visits, the medical records reveal that Recker complained of back, groin, and knee pain. He also had panic attacks and anxiety. However, at no time did he report acute neurological symptoms such as dizziness, seizures, lightheadedness, or nausea. Recker also never reported any significant blunt or penetrating trauma during his time as a firefighter trainee. Eighteen days after he voluntarily quit the training program, Recker experienced a vertebral artery dissection and a stroke. Dr. Herron summarized this evidence in his report, which concluded that Recker's vertebral artery dissection and stroke were not causally related to his training activities. This evidence is sufficient to support the Board's conclusion that Recker's vertebral dissection and stroke were not injuries arising out of his employment with the City. We therefore affirm the Board's denial of Recker's application for worker's compensation benefits.

[17] Affirmed.

Kirsch, J., and Bailey, J., concur.