FILED

Dec 12 2019, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Kevin L. Likes | Peter J. Bagiackas |
| Auburn, Indiana | South Bend, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gina Senter, | December 12, 2019 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 19A-EX-1064 |
| v. | Appeal from the Worker's Compensation Board of Indiana |
| Foremost Fabricators, | The Honorable Linda Peterson, Hamilton Chairman of Worker's Compensation Board of Indiana |
| *Appellee-Defendant.* | Application No. C-232196 |

**Tavitas, Judge.**

## Case Summary

[1]     Gina Senter appeals the Indiana Worker's Compensation Board's (the "Board")
order, which granted Senter permanent partial impairment benefits totaling
$12,880.00.  We reverse and remand.

## Issue

The single issue on appeal is whether the Board erred in calculating Senter's award pursuant to Indiana Code Section 22-3-3-10 (the "Statute") after finding Senter required surgery to amputate her left small finger and the outside portion of her hand due to a workplace injury.

## Facts

On April 29, 2014, Senter sustained an injury while working at her place of employment, Foremost Fabricators, LLC ("Foremost"). Senter's "left little finger (i.e. 5th digit on the left hand) got caught between two rollers on a roller machine." Appellant's App. Vol. II p. 15. The same day, Foremost selected Dr. David Cutcliffe to evaluate and treat Senter. After evaluating Senter, Dr. Cutcliffe "recommended a fingertip amputation to restore finger function to the left little finger." *Id.* at 16. Dr. Cutcliffe performed surgery the same day and amputated the top portion of Senter's finger.

Dr. Cutcliffe again evaluated Senter on May 20, 2014, and found that, although Senter's incision was "clean and dry, [with] no evidence of infection," Senter "may still need a revision amputation due to the poor vascularity of the small finger." *Id.* A week later, on May 27, 2014, at a follow-up appointment, Dr. Cutcliffe found that the "remaining end" on Senter's left little finger needed a revision amputation. Dr. Cutcliffe "further opined that he would consider a ray amputation if the PIP joint of the small finger [could not] be preserved." *Id.* at 17 (internal quotations omitted).

[5] On May 30, 2014, Senter returned for the revision amputation, and Dr. Cutcliffe performed a "revision amputation small left finger with ray amputation."[1] *Id.* On September 23, 2014, at a follow-up office visit, Dr. Cutcliffe found that Senter "had achieved Maximum Medical Improvement with respect to her revision amputation little finger, ray amputation" and completed a "dismemberment chart." *Id.* Dr. Cutcliffe's "impairment assessment" also states that: "Patient has a 100% permanent partial impairment of the left little finger which converts to 10% of the hand. . . ." *Id.* at 31.

[6] After the April 29, 2014 accident, the parties disagreed regarding the "percentage of permanent partial impairment" Senter sustained on her hand, "and accordingly, what amount of Permanent Partial Impairment benefits" Senter was entitled to receive from Foremost as a result of her injuries. *Id.* Importantly, Senter argued that a "ray amputation included the removal of the bone along the left side of the left hand clear to the wrist joint." *Id.* at 20. Therefore, according to Senter, she was entitled to an award for one-third loss of her hand.

[7] On November 3, 2015, Senter filed her application for adjustment of claim before the single hearing member of the Board (the "SHM"). Senter sought an award of $65,400.00 as a result of her injuries. On September 25, 2018, the

---

[1] Appellant, in her brief, defines a ray amputation as "the complete amputation of the little finger, the bone along the outside of the hand and fatty portion of the outside of the hand." Appellant's Br. p. 6.

SHM issued his order. The SHM found that Senter was entitled to an award of $12,880.00. The SHM reached this conclusion as follows:

> 7. [ ] The pre-operative and post-operative diagnoses were: "amputation of left small finger." The operative procedure performed was: "Revision amputation left small finger with ray amputation."

> 8. On September 23, 2014, Dr. Cutcliffe evaluated Plaintiff at an office visit. On that occasion, Dr. Cutcliffe opined that plaintiff had achieved Maximum Medical Improvement with respect to her revision amputation little finger, ray amputation. On that occasion, **Dr. Cutcliffe completed a "Dismemberment Chart" evidencing the precise location of the amputation that took place in the ray procedure.**

> * * * * *

> 11. As a consequence of the ray procedure to Plaintiff's left hand performed on May 30, 2014 by Dr. Cutcliffe, Plaintiff sustained permanent partial impairment of thirteen (13) percent to the left hand [thirteen percent impairment was proposed by Foremost in a filing]. [Pursuant to Indiana Code Section 22-3-3-10(i)(1), the separation "of the hand by separation below the elbow joint, [equals] forty (40) degrees of permanent impairment."] Thirteen percent permanent partial impairment of the hand equals 5.2 degrees of the hand (40 degrees x .13), and given Plaintiff's date of accident, that equals $7,280 worth of permanent partial impairment benefits (5.2 degrees x $1,400 per degree).

> 12. Given Plaintiff's date of accident, the doubling provision for loss of the left little finger related to permanent partial impairment benefits applies to Plaintiff's injury sustained in the Work-Related Accident of April 29, 2014. The permanent partial

impairment rating sustained by Plaintiff to her left hand as a consequence of the ray procedure includes impairment for the amputation of the left little finger. Accordingly, in light of the doubling provision, an additional four (4) degrees needs to be added to Plaintiff's permanent partial impairment benefits for loss of the left little finger by amputation. Given Plaintiff's date of accident, four degrees equals $5,600 worth of permanent partial impairment benefits (4 degrees x $1,400 per degree).

*Id.* at 13 (emphasis supplied).

[8] As to the SHM's doubling calculation, pursuant to Indiana Code Section 22-3-3-10(i)(2), "For the loss by separation of any of the body parts described" in subsections (1), (3), (5), or (8) of the statute, which would include the amputation of Senter's finger, "the dollar values per degree applying on this date of the injury as described in subsection (j) shall be multiplied by two (2)" (the "doubling provision"). This doubling provision, however, "does not apply to a loss of use that is not a loss by separation." *Id.* Moreover, Indiana Code Section 22-3-3-10(i)(1) states that an injured employee is entitled to "four (4) degrees of permanent impairment" for the little finger. Based on the SHM's findings, it appears that the SHM awarded Senter for thirteen percent loss of her hand plus an additional four degrees of permanent impairment to double the loss of Senter's finger in order to satisfy the doubling provision for loss of Senter's finger.

[9] The SHM found thirteen percent impairment resulted from Senter's amputation. The SHM also did not apply the doubling provision to the portion of Senter's hand amputation, and instead only applied the doubling provision to

Senter's finger amputation. It appears, instead, the SHM only accounted for Senter's hand amputation as "loss of use" and not "loss by separation." *See* Ind. Code § 22-3-3-10(i)(2) ("[T]he doubling provision of this subdivision does not apply to a loss of use that is not a loss by separation."); *see also* I.C. § 22-3-3-10(i)(9).

[10] On October 17, 2018, Senter filed her application for review by the Board. On April 15, 2019, the Board issued its opinion. The Board affirmed the SHM's $12,800.00 award, with five members of the Board voting to affirm and two members of the Board dissenting. The Board's order found as follows:

1. The only physician's report assessing a [permanent partial impairment] rating was done by Dr. David Cutcliffe, Plaintiff's surgeon. He found a 100% impairment of the little finger; a 10% permanent partial impairment rating of the hand for the loss by separation of the plaintiff's little finger, but no impairment for the cubital tunnel syndrome.

2. Dr. Cutcliffe stated he applied the AMA Guidelines to the Evaluation of Permanent Partial Impairment, 6th Edition.

3. Defendant, in a filing, proposed a 13% impairment of the hand.

4. Table 15-28 of the 6th edition of the AMA Guidelines gives a 13% impairment of the hand for an amputation at the metacarpal at CMC level.

5. As per the Dismemberment Chart completed by Dr. Cutcliffe, this is the level of Plaintiff's amputation.

6. IC 22-3-3-10(i)(2) requires a doubling of the amputation of a little finger, valued at 4 degrees under IC 22-3-3-10(i)(1).

* * * * *

9. Indiana worker's compensation law does not divide the hand into segments other than the fingers for the purposes of impairment.

10. [ ] Doubling Dr. Cutcliffe's 10% of the hand would pay $11,200.00. Plaintiff encourages us to view the amputation as 1/3 of Plaintiff's hand, along with the loss of her little finger and asks us to double each to pay more than $50,000.00.

11. Pursuant to IC 22-3-3-10(i)(14), given the totality of the evidence, using the higher rating of 13% of the hand and adding in the value of the finger once to accomplish the doubling required (because the finger is included once in the hand rating), the Board affirms the SHM's award of $12,880 as meeting the requirements of IC 22-3-3-10 within the discretion of the Board.

Appellant's App. Vol. II pp. 5-7. Senter now appeals.

## Analysis

The Worker's Compensation Board, as the trier of fact, has a duty to issue findings of fact that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. . . . "In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." . . . We examine the record only to determine whether there is substantial evidence and reasonable inferences

that can be drawn therefrom to support the Worker's Compensation Board's findings and conclusion. We will not reweigh the evidence or reassess witness credibility.

*Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009), *trans. denied* (citations omitted). "'As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area.'" *Id.* (quoting *Brown*, 892 N.E.2d at 646). The Board will only be reversed if it incorrectly interpreted the Act. *Id.*

[12] As Appellee correctly notes in its brief:

> The first and often the only step in resolving an issue of statutory interpretation is the language of the statute. . . . When a statute is clear and unambiguous on its face, we need not, and indeed must not, interpret the statute. . . . Rather, we give the statute its plain and clear meaning.

*Goff v. Wal-Mart Stores, Inc.,* 719 N.E.2d 1260, 1262 (Ind. Ct. App. 1999), *trans. denied* (citations omitted).

[13] Senter argues that the Board rendered a decision contrary to its own findings of fact by acknowledging that Senter was required to partially amputate her hand, but declining to award Senter, pursuant to the Statute, for that amputation. Specifically, Senter's argument is that both the SHM and the Board "acknowledged the partial hand amputation but failed to conclude that an award for such an injury was allowed under the statutes." Appellant's Br. p.

13. While the Board awarded Senter for the amputation of her small finger and the thirteen percent impairment of her hand, Senter argues she was also entitled to an award for the partial amputation of the portion of her hand that did not include the finger.

[14] The Statute sets forth compensation for employees regarding amputation as follows:

> (i) With respect to injuries in the following schedule occurring on and after July 1, 1991, the employee shall receive in addition to temporary total disability benefits, not exceeding one hundred twenty-five (125) weeks on account of the injury, compensation in an amount determined under the following schedule to be paid weekly at a rate of sixty-six and two-thirds percent (66 2/3 %) of the employee's average weekly wages during the fifty-two (52) weeks immediately preceding the week in which the injury occurred.
>
> > (1) Amputation: For the loss by separation of the thumb, twelve (12) degrees of permanent impairment; of the index finger, eight (8) degrees of permanent impairment; of the second finger, seven (7) degrees of permanent impairment; of the third or ring finger, six (6) degrees of permanent impairment; of the fourth or little finger, four (4) degrees of permanent impairment; of the hand by separation below the elbow joint, forty (40) degrees of permanent impairment; . . .
> >
> > (2) Amputations: For the loss by separation of any of the body parts described in subdivision (1) on or after July 1, 1997, and for the loss by separation of any of the body

parts described in subdivision (3), (5), or (8),[2] on or after July 1, 1999, the dollar values per degree applying on the date of the injury as described in subsection (j) shall be multiplied by two (2). **However, the doubling provision of this subdivision does not apply to a loss of use that is not a loss by separation.**

(3) . . . The loss of more than two (2) phalanges of a finger shall be considered as the loss of the entire finger. . . . The loss of not more than one (1) phalange of a finger shall be considered as the loss of one-third (1/3) of the finger and compensation shall be paid for one-third (1/3) of the degrees payable for the loss of the entire finger. The loss of more than one (1) phalange of the finger but not more than two (2) phalanges of the finger shall be considered as the loss of one-half (1/2) of the finger and compensation shall be paid for one-half (1/2) of the degrees payable for the loss of the entire finger.

\* \* \* \* \*

(9) Loss of use: The total permanent loss of the use of an arm, a hand, a thumb, a finger, a leg, a foot, a toe, or a phalange shall be considered as the equivalent of the loss by separation of the arm, hand, thumb, finger, leg, foot, toe, or phalange, and compensation shall be paid in the same amount as for the loss by separation. **However, the doubling provision of subdivision (2) does not apply to a loss of use that is not a loss by separation.**

(10) Partial loss of use: For the permanent partial loss of the use of an arm, a hand, a thumb, a finger, a leg, a foot, a toe, or a phalange, compensation shall be paid for the

---

[2] Subsections five and eight are inapplicable here.

proportionate loss of the use of the arm, hand, thumb, finger, leg, foot, toe, or phalange.

\* \* \* \* \*

(14) In all other cases of permanent partial impairment, compensation proportionate to the degree of a permanent partial impairment, in the discretion of the worker's compensation board, not exceeding one hundred (100) degrees of permanent impairment.

(15) In all cases of permanent disfigurement which may impair the future usefulness or opportunities of the employee, compensation, in the discretion of the worker's compensation board, not exceeding forty (40) degrees of permanent impairment except that no compensation shall be payable under this subdivision where compensation is payable elsewhere in this section.

\* \* \* \* \*

I.C. § 22-3-3-10(i) (emphasis added).

[15] The Statute does not expressly state the amount that should be awarded for the ray amputation of Senter's hand that does not include the finger. Instead, the Statute states: "[i]n all other cases of permanent partial impairment," the award will be "compensation proportionate to the degree of a permanent partial impairment, in the discretion of the worker's compensation board." I.C. § 22-3-3-10(i)(14). The Statute also differentiates between a "loss of use that is not a loss by separation." I.C. § 22-3-3-10(i)(2), (9).

[16]     Here, the SHM, as affirmed by the Board, found that Senter underwent both "revision amputation little finger, ray amputation." Appellant's App. Vol. II p. 12. While the Board has discretion to fill in the gaps of the Statute, the Board still must follow the Statute when, as here, the language is clear in differentiating between loss of use and loss by separation and the calculation for each.[3] The plain language of the Statute evidences that the legislature clearly intended awards for loss by separation to be calculated differently than awards for loss of use. The Board affirmed the SHM's finding of separation by noting the ray amputation and was required to calculate accordingly. *See also* Appellee's Br. p. 12 ("Senter underwent a ray amputation or ray procedure incurring a partial amputation of the left hand (specifically, the outside portion of the hand), and amputation of the left little or [fifth] finger as a consequence of the Work-Related Accident.").

[17]     The distinction between loss by separation or loss of use matters because the doubling provision applies to amputations "of the hand by separation below the elbow joint. . . ." I.C. § 22-3-3-10(i)(1).[4] While we acknowledge that Senter is not entitled to an award for loss of the *entire* hand, Appellees' argument is premised on the fact that no partial award can be given for amputation of the hand. This is too narrow a reading of the Statute. We decline to find

---

[3] The Board is not required to follow Senter's calculations for what percentage of loss she should be awarded for; however, failure to acknowledge partial amputation of the hand results in a loss for which the Statute contemplates Senter should be compensated. For example, if the Board found the doubling provision applied to the thirteen percent loss of Senter's entire hand, based on our calculations, Senter would have been entitled to an award of $14,560.00 or $1,680.00 more than she was awarded.

[4] As noted above, the doubling provision applies to loss by separation, but not loss of use.

specifically that Senter is entitled to compensation for one-third of her hand; however, the Board should use its discretion to determine the percentage of the hand amputation Senter should be awarded.

[18] Accordingly, we reverse and remand with instructions for the Board to calculate Senter's award consistently with the Board's findings.

## Conclusion

[19] The Board improperly calculated its award to Senter based on its factual findings. Accordingly, we reverse and remand.

[20] Reversed and remanded.

Brown, J., and Altice, J., concur.